THE BOROUGH OF STAMFORD *vs.* THE STAMFORD HORSE RAILROAD COMPANY.

Fairfield Co., March T., 1888. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

A horse railroad company was incorporated by the General Assembly upon a petition asking for a charter and specifying streets in the borough of *S* in which it desired to lay its tracks, and upon a published notice, required by law, that such a petition would be presented, which also specified the streets proposed to be occupied. The General Assembly granted the charter, specifying four terminal points in different quarters of the borough between which the track might be laid and the particular streets through which the road might run, omitting two that the petition had named and adding one that was not named, the section closing as follows:—" and over and across any highway within any of the points of commencing or termination aforesaid." Held that the company had no right to lay its track through any street not specified.

And held to be no objection to the granting of an injunction against the laying of the track in such a street, that the borough would have the right to remove it by force when laid.

Where a party has a remedy by his own act involving the use of force, it

does not constitute that adequate remedy at law which excludes equit-
able relief.

The borough, being charged with the duty of keeping its streets in proper
condition for public travel and responsible for their being so, was the
proper party to apply for an injunction against the unauthorized laying
of the track in the streets.

[Argued May 17th—decided June 26th, 1888.]

SUIT for an injunction against the laying of its track,
by the defendant corporation in a certain street of the
plaintiff borough; brought to the Superior Court in Fair-
field County.   The following facts were found by the court.

The plaintiff borough was incorporated in 1882.   By its
charter it was made the duty of the borough to make and
repair streets within its limits, to keep the same in order and
to remove all obstructions upon them.

The defendant company was incorporated in 1886, upon a
petition of its corporators to the General Assembly for a
charter that should authorize the company to lay the tracks
of a horse railroad between specified points on the outskirts
of the plaintiff borough on the north and south respectively,
and between specified points on the outskirts on the east
and west respectively, and mentioning by name the streets
through which the company desired the right to pass.   The
charter granted upon this petition specified certain streets
through which the tracks might be laid, omitting Summer
street, which had been named in the petition, and including
two streets that had not been named in it.   Among the
streets which were not named in either the petition or the
charter was Bedford street, to which alone the present con-
troversy relates.

The grant of the right to lay tracks in the streets of the
borough was as follows :—

" Commencing at Summer street, corner of Liberty Place,
and running westward over Liberty Place to Washington
Avenue; thence over and upon Washington Avenue to
Broad street; through Broad street to Atlantic street;
thence the whole length of Atlantic street; also from the
intersection of Main and Atlantic streets over Main to Elm

street; thence over Elm street to Shippan Road, so called; thence over Shippan Road to the south end of Shippan Point; also from the intersection of Main and Atlantic streets westward over Main street to Mill River; also from Atlantic street over Cottage Place to South street, and from thence southerly over South street across the bridge thereon to the south end of South street; and over and across any highway within any of the points of commencing or termination aforesaid."

The statute (Gen. Statutes, § 392), provides that no petition for the incorporation of a railroad company shall be heard by the General Assembly, unless public notice shall have been given by advertisement in some newspaper published in the county, designating the intended route of such road; and § 393 provides that every charter of a horse railroad company shall " specify the streets or highways through which it may pass, or otherwise designate the route on which it may be authorized to be made." Under the former section of the statute the petitioners for the charter had published in a Stamford newspaper, on the 9th of November, 1885, the following notice:—

" Notice is hereby given that the undersigned will apply to the General Assembly of this state at its session on the Wednesday after the first Monday of January, 1886, for the re-incorporation of the Stamford Horse Railroad Company. Commencing on Summer street at or near Liberty Place, running over Summer to Broad and to Atlantic; thence the whole length of Atlantic. Also from the intersection of Main and Atlantic, over Main to Elm to Shippan Road, so called, over said Shippan Road to south end of Shippan Point. Also from said intersection of Main and Atlantic over Main to Mill River. Dated at Stamford, this 9th day of November, 1885."

The defendant, claiming to act under the provisions of its charter, has laid its tracks as follows:—Commencing at the corner of Liberty Place and Summer street in the town of Stamford and outside of the limits of the borough, thence through and upon a continuous highway known as Summer

street and Hoyt street to a highway known as Bedford street, thence along Bedford street to the north line of the borough, and thence on, through and upon Bedford street, to a point about fifty feet from the junction of Atlantic, Broad and Bedford streets in the borough. The defendant claims to have the right to continue laying its tracks over this fifty feet on Bedford street to Atlantic street and there to connect with its tracks already laid on Atlantic street, and intends to do so.

The length of Bedford street within the borough is eighteen hundred and eighty-nine feet, and its width is forty feet on the northern line of the borough, and nearly the same width through three fourths of its length in the borough, but is thirty-one feet in width at its termination at the point of junction with Atlantic and Broad streets. When the railroad company commenced work on Bedford street within the limits of the borough, the board of warden and burgesses immediately requested the borough attorney to advise it whether the company had the right to construct its road on Bedford street, and the borough attorney immediately informed J. B. Curtis, Esq., a director and the attorney of the railroad company, that the warden and burgesses had taken such action, and their action was published during the same week in the Stamford Advocate, a weekly paper published in Stamford; but the company continued the construction of its road and had expended about $1,500 when the warden and burgesses, immediately upon receiving the report of the borough attorney, commenced the present action.

The cost of the line from the stables on Liberty Place to the intersection of the line on Atlantic street is $3,800, and the cost of that portion of the line on Bedford street within the borough limits is $1,500.

The warden and burgesses had no knowledge that the company intended to come down Bedford street within the borough limits until it commenced work on Bedford street within the borough.

The company has laid its tracks in the borough and in Bedford street with a rail called the T rail. The track is

constructed by laying ties crosswise of the street about five feet apart, the bottom of the ties being fourteen inches below the surface of the street. Upon each end of these ties wooden stringers, six inches in height, are laid lengthwise of the street, and upon the top of the stringers the rails, which are three inches in height, are laid and fastened; the top of the rail being left, at the completion of the track, on a level with the surface of the street.

In a paved street, where the pavement is laid close to the rail on either side, and the pavement is kept in thorough repair, so as to be fully as high as the top of the rail, a horse railroad may be maintained so as to be of very slight inconvenience to public travel. Any horse railroad in any street is some impediment to the free and safe use of the street for travel with carriages. In an unpaved street, where the earth is liable to be worn away by use or washed away by the action of water so as to leave the rail exposed above the level for a part or the whole of its height, a horse railroad track becomes a serious and menacing obstacle to travel.

The streets in the borough of Stamford are not paved and are much used. The soil is a gravelly loam, easily displaced, and pervious to the action of water. The track as now laid in Bedford street is so liable to become exposed, and to render the street defective and unsafe to travelers, that accidents are very liable to happen therein.

Upon these facts the case was reserved for the advice of this court.

*S. Fessenden* and *N. C. Downs*, for the plaintiff.

1. Upon no reasonable construction of the language of its charter has the defendant any right whatever to lay its track on Bedford street, unless the described line of its track crosses some portion of the street. The line described in the charter nowhere touches that street. The defendant bases its claim upon the language of the last clause of section 1, which is as follows:—"and over and across any highway within any of the points of commencing or termination aforesaid." The construction therefore to

be placed upon the language of this clause becomes the important inquiry in this case. We understand the principal if not the only claim of the defendant to be, that the language of this clause should be construed as giving it the right to build its railroad along the entire length of any street, even though such street is neither crossed nor touched by the line of the road described in it, provided that such street lies within lines connecting any of the points of commencement and termination of the road. In other words, that the language of this section defines a certain territory within which the defendant may build its road on any street. It should be noticed that only a small portion of Bedford street is within a line connecting any of the points of commencement and termination. In view of the requirements of the statute, (Gen. Statutes, § 392,) that the public notice given shall designate the intended route of the road and the streets and highways along which it is proposed to be extended, and in view of the fact that the defendant's notice distinctly described the line of its proposed road, naming the streets over which it desired it to pass, it is to be presumed that the legislature by the language of its charter intended to definitely locate the entire line of the defendant's track. To charge the legislature with the intention to give to this corporation the right to build its road on streets, the names of which neither appear in the notice nor in the language of the charter, and which would practically give them the right to use all the streets of the borough, is to impute to it a total disregard of the provisions of the statute as well as the grossest unfairness to the people of Stamford. If the last clause of section 1 of the charter is to be construed as claimed by the defendant, then there was no occasion whatever for naming any streets. It was only necessary for the legislature to properly describe the territory, upon the streets within which the defendant might construct its road, or to provide that the defendant might build upon any streets which were covered by lines extending between certain points. Instead of adopting this course the legislature in the clearest lan-

guage has definitely located and established every line of the proposed road, apparently intending to leave no question whatever regarding the designated route or the names of the streets which should constitute it. The rule of construction of a charter is to be most strongly against the party claiming rights under it. This is well settled. *Fertilizing Co.* v. *Hyde Park.* 97 U. S. R., 666; *Bradley* v. *N. Y. & N. H. R. R. Co.*, 21 Conn., 294, 306; *Burritt* v. *City of New Haven*, 42 id., 174, 202; *Com.* v. *Erie & North East R. R. Co.*, 27 Penn. St., 339; *Com.* v. *Central R. R. Co.*, 52 id., 506; *Morris & Essex R. R. Co.* v. *City of Newark*, 10 N. Jer. Eq., 352, 363; *Att'y Gen.* v. *Lombard & South St. R. R. Co.*, 10 Phila., 352.

2. If the right claimed is not found to exist in the defendant's charter the plaintiff borough is entitled to the injunction sought, and this, in the first place, upon the ground of an unauthorized invasion of the right of the borough to have the full and unrestricted use, management and control of its streets for all proper purposes and to keep them free from encroachments and safe for public travel. The principle is now fully established that an injunction may be granted where there is no question of damages, but only one of invasion of a right. *City of Philadelphia* v. *Thirteenth & Fifteenth St. R. R. Co.*, 8 Phila., 648: *Att'y Gen.* v. *Lombard & South St. R. R. Co.*, 10 id., 352; *Com.* v. *Pittsburgh & Connellsville R. R. Co.*, 24 Penn. St., 159; *Inhab of Springfield* v. *Conn. River R. R. Co.*, 4 Cush., 63, 67; *Att'y Gen.* v. *Cohoes Co.*, 6 Paige, 133; *People* v. *Kerr*, 27 N. York, 188; *Inhab. of Greenwich* v. *Easton & Amboy R. R. Co.*, 24 N. Jer. Eq., 217; *Metropolitan City R. R. Co.* v. *City of Chicago*, 96 Ill., 620; *Market St. R. R. Co.* v. *Central R. R. Co.*, 51 Cal., 583; Pomeroy's Eq., § 1349; High on Injunctions, §§ 819, 1555; Pierce on Railroads, 251. The injunction may also be granted on the ground of reasonable apprehension of specific injury to the plaintiff, as here in the increased expense of maintaining the street in a safe condition for travel. Angell on Highways, § 241; *City of Philadelphia* v. *Thirteenth & Fifteenth St. R. R. Co.*,

8 Phila., 648, 650; *Commissioners* v. *Long*, 1 Parsons, 149; *Trustees of Watertown* v. *Cowen*, 4 Paige, 510. Also on the ground of liability to travelers for damages by reason of an unlawful obstruction of the highway. *Town of Burlington* v. *Schwarzman*, 52 Conn., 181. "Where, by its charter or constituent act, a municipality has the usual control and supervision of its streets and public places, it may, in its corporate name, institute judicial proceedings to prevent or remove obstructions thereon." Dillon Mun. Corp., (3d ed.) § 659. Here, by the 39th section of its charter this control of its streets is given to the borough in express terms.

3. It is claimed that the borough cannot have equitable aid for the removal of the track laid by the defendant and for the prevention of further laying of its track in Bedford street, because, if the company has no right to lay its track there, it is a public nuisance which the borough has a right to abate by its own act. But such a right to use force is not what the law would regard as an adequate remedy. The right to resort to force does not impose upon a party the duty of resorting to it. The law favors peaceful measures, and a resort to its courts for the redress of wrongs and the establishment of rights.

*J. B. Curtis* and *R. A. Fosdick*, for the defendant.

1. The territory over which the defendant company is authorized by its charter to lay its tracks is thus described in the first section:—"Commencing at Summer street, corner of Liberty Place, and running westward over Liberty Place to Washington Avenue; thence over and upon Washington Avenue to Broad street; through Broad street to Atlantic street; thence the whole length of Atlantic street; also from the intersection of Main and Atlantic streets over Main to Elm street; thence over Elm street to Shippan Road, so called; thence over Shippan Road to the south end of Shippan Point; also from the intersection of Main and Atlantic streets westward over Main street to Mill River; also from Atlantic street over Cottage Place to South street,

and from thence southerly over South street across the bridge thereon to the south end of South street; and over and across any highway within any of the points of commencing or termination aforesaid." Under the concluding clause the defendant claims ample power and authority to lay its tracks over the remaining fifty feet on Bedford street and to run its cars over the same.

2. The charter of a private corporation, although it should be strictly construed against the grantees, yet must not be so literally or strictly construed as to defeat the evident purpose of the legislature. It is to receive a reasonably strict and guarded construction and no more, and if the words of the grant can by reasonable intendment be construed to give the power contended for, they should be so construed, rather than to give them a narrower construction which would defeat the purpose of the grant. *Bardstown & Louisville R. R. Co.* v. *Metcalfe,* 4 Metc. (Ky.), 199 , *In re N. York & Harlem R. R. Co.* v. *Kip,* 46 N. York, 551; *Perrine* v. *Chesapeake & Del. Canal Co.,* 9 How., 172.

3. The word " over " in the charter may mean " across," but certainly does not mean this when connected with the word " across," because it would be using the word " over " in such a way as to give it no meaning whatever. It would be equivalent to saying " across and across," which would be simply absurd. Now " over " the highway may mean " lengthwise " or " throughout the length , " so that to lay a track " over " a highway may mean to lay it " lengthwise " upon the highway. One may wander " over " the earth or walk " over " a field from one point to another. Now upon examining the words of the charter in reference to the streets and avenues over which the defendant is expressly empowered to lay its tracks, the word " over " is used in almost every case in the sense of " along and upon " any street or avenue, and immediately following and connected by a conjunction are the words constituting the clause " and over and across any highway within any of the points of commencing or termination aforesaid." In mentioning specific streets and avenues in the act of incorporation the

language is such as to exhaust the description in reference to those streets and avenues, leaving the meaning unambiguous and with nothing further to describe. It would therefore be simply absurd, after describing that the track was to be laid lengthwise " over " and " through " certain specific streets and avenues and through their whole length, to then consider the language and words of the concluding clause to have reference merely to any streets which might cross or intersect any of the expressly mentioned streets and avenues.

4. In the construction of an act every word, if possible, should be given force and effect, and also a word used in one sense in one part of an act, should have the same meaning where it occurs in another part of the same act. These principles of construction are simply nullified unless the word " over " is used here in a sense different from and in contradistinction to the word " across." The words " over and across " necessarily cover the exact claim contended for by the defendant. The streets and avenues specifically mentioned are fully described, and comprehend all places in them crossed or intersected by any other street or streets. The language " over and across any highway within any of the points of commencing or termination aforesaid," would give just the words necessary to authorize the defendant to go over any street from end to end, and to cross any street necessary to be crossed from side to side, within any of the points of commencing or termination.

5. An examination of the notices made a part of this finding, together with the act of incorporation of the original Stamford Horse Railroad Company (Special Acts and Resolutions of 1870, p. 886), clearly shows that the present charter was intended to cover the same territory as did the charter of 1870, which did not specify any particular highways or streets through which the tracks might be laid, but left it a matter of discretion with the company as to what routes should be selected between the two termini. The first notice was simply to renew the original charter, and the second was given to comply with the statute upon the

subject and nothing more. But both notices are for the re-incorporation of the Stamford Horse Railroad Company. Again, by examining the words of the act of incorporation of 1870, we find that the original company not only had the right to lay its tracks from Liberty Place to Shippan Point by the most feasible route, but "*between any intermediate points*," and the present act was intended to cover the same ground in the clause, "*and over and across any highway within any of the points of commencing or termination aforesaid.*"

6. Is Bedford street "within" any of the points of commencing or termination, as set forth in the charter? The word "within" usually means a "space included by certain boundaries." The term "boundary" is "applied to include the objects placed or existing at the angles of the bounding lines, as well as those which extend along the lines of separation." Bouv. Law Dict., *in verbum.* Having ascertained where the points of commencing and termination are, it is very easy, by applying the principle above stated, to draw a straight line from any point of commencing to any point of termination, and thus ascertain the limits or boundaries within which and the territory over which the company has the undoubted right to lay its tracks. But it is said that the northern part of Bedford street is outside the straight line thus drawn, and therefore not included in our grant. We submit that the space of fifty feet, which was uncompleted at the commencement of this action, is within this line, and included in our territory, and that only a very small portion of Bedford street is outside of a direct line drawn between the two mentioned points. But even if an insignificant portion of the northern part of Bedford street is without this line, yet, if this portion is necessary to the full and reasonable enjoyment of the grant, and if the grant would be of little or no use without it, then it would be included within the terms of the charter. The word "within" is to be used in the sense of "to" or "near." When a grant gives the right to go "within" certain boundaries, and the right to go "over and across any highway within any of the points of commencing or termination," the

evident meaning is to grant the privilege of going over, that is, along and upon, the whole length of any highway, provided that, practically, the entire highway is included within such boundaries. Dillon Mun. Corp., 3d ed., § 707; *Farmers' Turnpike Road* v. *Coventry*, 10 Johns., 389; *Mohawk Bridge Co.* v. *Utica & Schenectady R. R. Co.*, 6 Paige, 554; *Lackland* v. *North Missouri R. R. Co.*, 31 Misso., 180; *S. C.*, 34 id., 259; *Porter* v. *North Missouri R. R. Co.*, 33 id., 128. "An injunction ought not to be granted to restrain a trivial departure from the provisions of a statute, where it will cause greater public injury than can, in any event, result from the acts sought to be enjoined." *Fitzpatrick* v. *Flagg*, 5 Abb. Pr. R., 213.

7. The next question presented is, whether an injunction should be granted upon the facts found. It is a well settled principle of law that where the party asking for an injunction has an adequate remedy, an injunction will not be granted. High on Injunctions, 2d ed., §§ 29, 745, 817, 824; *Bay State Brick Co.* v. *Foster*, 115 Mass., 431; *Att'y Gen.* v. *Metropolitan R. R. Co.*, 125 id., 515; *Remington* v. *Foster*, 42 Wis., 608; *Powell* v *Foster*, 59 Geo., 790; *Brown's Appeal*, 66 Penn. St., 155. In the case at bar the warden and burgesses have the most ample and complete power "to prevent and summarily remove all obstructions and incumbrances in and upon the streets, sidewalks, highways and public grounds in said borough." Charter, § 39. It is certainly a multiplication of powers, where the legislature has given full and ample power to the warden and burgesses, to claim in addition that their powers may be exercised by a court of equity, before any action by them has been taken. *Bay State Brick Co.* v. *Foster*, 115 Mass., 431.

8. In *Coast Line R. R. Co.* v. *Cohen*, 50 Geo., 462, the court said—"A street railroad so laid as to be even with the street and properly laid and kept in order, is no obstruction to the ordinary use of the streets, as all experience shows it is a very desirable and proper use of the street." In *Mayor etc., of Hudson* v. *Thorne*, 7 Paige, 261, it was held "that the court of chancery will not interfere by injunction to enforce

the penal laws of the state, or the by-laws of a corporation, unless the act sought to be restrained is in itself a nuisance. See also *Hawley* v. *Harrall*, 19 Conn., 142; *Behn* v. *Young*, 21 Geo., 207. "An injunction will not be granted when not necessary to protect the rights of one party, and certain to be prejudicial to those of the other." *M' Cafferty* v. *Glazier*, 10 How. Pr. R., 475, *Gallatin* v. *Oriental Bank*, 16 id., 253; *Gurnee* v. *Odell*, 13 Abb. Pr. R., 264; *Power* v. *Alger*, id., 284. In *New Albany & Salem R. R.· Co.* v. *O' Daily*, 12 Ind., 551, it was held "that the construction of a railway in a city is not a nuisance· *per se* and the laying of its tracks along a public street will not be enjoined on that ground." See also *Elliott* v. *Fair Haven & Westville Horse R. R. Co.*, 32 Conn., 579; *Anderson* v. *Rochester, Lockport & Niagara Falls R. R. Co.*, 9 How. Pr. R., 553; *Hamilton* v. *N. York & Harlem R. R. Co.*, 9 Paige, 171.

9. The injury to Bedford street, if any, cannot be *irreparable*, because, first, the plaintiff could have *summarily removed* the same if· an obstruction, *vi et armis* if necessary; and, second, because under the finding the road, if properly paved, may be "*maintained so as to be of very slight inconvenience.*" *Att'y Gen.* v. *Bay State Brick Co.*, 115 Mass., 431; *Burnham* v. *Hotchkiss*, 14 Conn., 311.

10. The plaintiff is clearly estopped in its claims for an injunction. It permitted the construction of several lines of track on different streets not mentioned in the charter, and after allowing nearly a year to elapse after the session of the legislature at which the defendant's charter was amended, with full knowledge of all the facts. "Where the defendant, under a franchise granted by the legislature, has been engaged in the construction of a bridge for more than a year, and until the work is almost completed, and has made and incurred large expenditures, with full knowledge upon the part of the persons who might be affected by such bridge, such acquiescence and delay may prevent relief by injunction, *in limine.*" High on Injunctions, 2d ed., § 837. See also *Att'y Gen.* v.· *N. York & Long Branch R. R. Co.*, 24 N. Jer.

Eq., 49; *Att'y Gen.* v. *Del. & Bound Brook R. R. Co.*, 27 id., 1; *White* v. *Town of Stamford*, 37 Conn., 578.

PARDEE, J.　The defendant company claiming that every street in the borough of Stamford, included within lines drawn from the northern terminus established by its charter to the eastern, thence to the southern, thence to the western, was subjected to its uses by the terms of its charter, began in 1887 to lay its track in Bedford street without previous permission by the plaintiff, and had completed the same to within fifty feet of the end of the street, when the work was stopped by the present injunction.　It presses the same claim upon this court.

The defendant gave public notice in advance to the inhabitants of the borough as to the streets by name upon which it desired leave to impose its tracks; its petition repeated the list; and the legislature scrutinized it, and for reasons satisfactory to itself excluded one street asked for, added by name two not originally asked for, and granted leave to pass over certain streets by name.　In view of this laborious effort to put precise limitations to this grant to a private corporation to take for its own profit without compensation something from the absolute right of the public to the use of highways, it is impossible to find in the words cited legislative permission or intent to subject without name to the use of the defendant, not only the streets for which it asked, and which the legislature excluded from the grant, but also practically every street in the borough unnamed.

The canons of interpretation require us to find in the last clause a meaning which puts it in accord with, in explanation and in furtherance of, the manifest intent to grant some streets by name and reserve all not named.　That meaning is upon the surface.　The words referred to are not necessary; the grant would be perfect in their absence.　Like many words in charters, deeds, contracts and pleadings, they are inserted from abundant caution; to protect the defendant from any assertion of claim that it had not the right to

lay its track over or across any intersecting street. They add no street to the number of those specified by name.

The public have the absolute right to the fullest legal use of every part of the highway. The defendant, a private corporation, in the absence either of legislative or municipal permission, has no right to impose a permanent structure thereon and thereby sequester to its exclusive use for its exclusive profit any portion thereof.

The borough, as the instrumentality by which the governmental duty of constructing and maintaining highways is performed, as the guardian for the public of the highways dedicated to or purchased for its use, is entitled to an injunction against such an act by such a corporation for the sole reason that it is an unauthorized exclusion of the public from some portion of the way, and this regardless of the question as to the greater or less degree of inconvenience or danger or expense thence resulting to the public. Moreover, the borough is charged with the duty and clothed with the power to maintain the highways within its limits in a reasonable condition of safety for travelers. Upon it is the responsibility for failure to perform this duty. The finding is that every horse railroad track is of necessity "some impediment to the free and safe use of the street for travel with carriages," and that it may become a "serious and menacing obstacle to travel." That is, it is certain to be dangerous in some degree, and may be greatly so. Inevitably there results to the plaintiff increased liability to damages and increased expenditure in protection and repairs.

Upon the finding, as against the defendant, a trespasser, the plaintiff, both as it respects the portion of track already laid and the portion yet to be laid, is entitled to the presumption that the danger will be in the highest degree. The defendant, leaving it in uncertainty, must rest under the burden of doubt. For these reasons too, the plaintiff is entitled to the writ.

And none the less so because of its right to remove the track by force. As a rule injunctions are denied to those who have adequate remedy at law. Where the choice is

between the ordinary and the extraordinary processes of law, and the former are sufficient, the rule will not permit the use of the latter. In some cases of nuisance and in some cases of trespass the law permits an individual to abate the one and prevent the other by force, because such permission is necessary to the complete protection of property and person. When the choice is between redress or prevention of injury by force and by peaceful process, the law is well pleased if the individual will consent to waive his right to the use of force and await its action. Therefore, as between force and the extraordinary writ of injunction, the rule will permit the latter. Certainly it should be no cause of complaint by the defendant that it is allowed peacefully to take up its track, with the attendant care and economy, rather than that the plaintiff should do it by force.

The defendant, without permission from either legislature or borough, without asking permission from either, and without notice to the latter, as a trespasser began to lay a track upon Bedford street. Immediately the plaintiff began to investigate the question as to its rights in the premises, and upon receiving the advice of its attorney, instituted this proceeding. Laches is not found. We cannot find it as a fact, nor, upon the finding, impute it as a matter of law.

The Superior Court is advised to render judgment for the plaintiff.

In this opinion the other judges concurred.