Hillsborough, ⎰
Oct. 25, 1902. ⎱

## ATTORNEY–GENERAL (*ex rel.* BOSTON & MAINE RAILROAD) *v.* DERRY & PELHAM ELECTRIC RAILWAY CO. *& a.*

Under a legislative charter which authorizes the maintenance of a street rail-
way between two termini and extending through several towns, over such
highways as may be necessary for the public accommodation, upon a route
described in general terms and to be made definite by the selectmen, the
corporation is not empowered to construct, nor the selectmen to lay out, a
branch road outside the indicated line for the convenience of the inhabitants
in any town, especially when the right to build branches and extensions of
the proposed railway is not expressly conferred.

PETITION, for a writ of *quo warranto.*    Facts found at the
September term, 1902, of the superior court by *Peaslee,* J., who
transferred the questions of law arising thereon.

*Edwin G. Eastman,* attorney-general, and *Frank S. Streeter,* for
the plaintiff.

*Samuel W. Emery,* for the defendants.

WALKER, J.    The defendant was incorporated by a special act
of the legislature in 1899, and was thereby empowered " to con-
struct, maintain, and use a railroad with convenient single or
double track, with necessary and convenient sidings, turnouts,
switches, and side tracks, from a point at or near the Boston &
Maine Railroad station in the town of Derry and known as
' Derry,' over and upon such highways, bridges, and public and
private lands as may be necessary for the public accommodation,
in the towns of Derry, Londonderry, and Windham in the county

of Rockingham, and of Pelham in the county of Hillsborough, to some convenient point or points in the state line between New Hampshire and Massachusetts." Laws 1899, *c.* 153, *s.* 1. This power was ratified and continued by chapter 171, Laws of 1901. Upon the defendant's petition to the selectmen of Derry, a street railroad has been laid out from the point first mentioned in the charter, westerly to the easterly line of Londonderry. The petition for laying out the road in Londonderry describes two lines — one commencing at the southerly line of that town in the Mammoth road and extending northerly along that road to the north line of the town, the other commencing at the end of the road in Derry on the easterly line of Londonderry, and extending southwesterly along a highway leading to Londonderry village, to the Mammoth road in that village. The railroad has also been laid out from the southerly terminus in Londonderry, southerly through the town of Windham and into Pelham until it reaches the Hudson, Pelham & Salem Electric Railway. It thus appears that, besides a direct route from Derry southwesterly through Londonderry and Windham into Pelham, the defendant seeks an additional route or line extending from Londonderry village in the southerly part of the town to its northerly line, which is the southerly line of Manchester. In other words, it claims the right to construct and operate a branch line from the main or principal line. By this plan two lines extend from Londonderry village — one north-easterly to Derry, the other northerly by the Mammoth road to Manchester. The plaintiff claims that the defendant has acquired no authority to occupy that part of the Mammoth road and maintain thereon a street railway.

Whatever power the defendant has to build and operate a street railway in Londonderry is derived from the legislature, and is defined and limited by the special act above referred to. From the language of the act, it is apparent that the legislature determined that the public good, convenience, or accommodation required the building and operation of a street railway from Derry through the towns mentioned to the Massachusetts line. It did not delegate to another tribunal the power to decide the question of the public necessity for such a means of transportation between the points indicated in the act. The granting of the right to the defendant to enter upon and appropriate public and private property in a designated locality for railroad purposes was a determination that the public good required the exercise of such extraordinary powers. The legislature did not constitute the selectmen of Londonderry a tribunal to decide whether the public good required the construction of a street railway within the territory of the town, as a part of a line between termini located outside the town

limits. In the case of a railway corporation formed under the general law (Laws 1895, c. 27), the question of the need of a railway over the general route proposed is determined by the court upon petition. This question is properly termed a "fundamental" one in *Petition of Nashua Street Railway*, 69 N. H. 275, 276, while the laying out of the way is said to be subsidiary. The controlling consideration in the proper determination of both is the public good. When, however, the legislature grants a special charter for a railway over a route described in general terms, and empowers some other tribunal to make the route specific and definite, it does not consolidate the two questions and authorize the latter tribunal to decide both. *Concord* v. *Horse Railroad*, 65 N. H. 30, 37. It decided conclusively that the public good required a street railway extending through the four towns mentioned when it granted the defendant's charter, and neither the selectmen of the towns nor the defendant can overrule or extend that authoritative and fundamental finding of the public need by laying out the railway over lands not fairly included within the general route prescribed by the charter. *Petition of Keene Electric Railway*, 68 N. H. 434. If the legislature has authorized the defendant in general language to construct a railway over one route, the selectmen cannot lay it out over another route, though they may think or be able to prove that the public accommodation would be best subserved by the latter route. If the legislature has made a mistake, it cannot be corrected by the selectmen. If upon a reasonable construction of the charter the legislative purpose was to grant a railway franchise to the defendant from Derry to the Massachusetts line by a reasonably direct and convenient route between those points, — if that was the general purpose of the legislature,— the selectmen cannot change it on the ground that the public accommodation requires an indirect and circuitous route. *Stamford* v. *Railroad*, 56 Conn. 381 ; *Brigham* v. *Railroad*, 1 Allen 316, 318. Much less would the selectmen of Londonderry have the power to locate that part of the railway extending through their town outside the general route prescribed in the charter, because such a location would be more convenient and useful to the citizens of that town. If the selectmen of each of the several towns through which the road passes had that power, or could define the meaning and scope of "the public accommodation," as used in the charter, by a reference merely to the local convenience of its inhabitants, the line as a whole might be extremely inconvenient and unreasonable as a means of public travel from one terminus to the other, or it might be laid out in one town and not in others, according to the different findings of the several boards of selectmen. The general purpose of the legislature must first be

ascertained and applied to the application for a definite location, before the question arises whether the public accommodation or convenience requires a particular location; and that question is to be determined by a consideration of the general utility of the road or the legislative purpose in authorizing its construction, rather than by the demands of local convenience in the particular town. The location of a road under a charter authorizing its construction in a single town, as public convenience may require, would be governed largely by local interests, which might have little application in the case of a rural road merely extending through the town and constituting therein a part of a line running through several towns.

The defendant was authorized to construct a street railway from Derry Depot to the Massachusetts line, over such highways and lands as "may be necessary for the public accommodation," in the towns of Derry, Londonderry, Windham, and Pelham. It is very evident that the legislature intended to authorize the construction of a rural railway between the termini mentioned. The question is, whether more than that was intended by the language of the charter. The defendant contends that, if the local needs of the towns require it, authority was granted to it to construct and maintain a railway over all the highways, as well as over other land in each of the towns mentioned; that is, to establish and maintain four local street railways. This argument is based principally upon the provision in the charter that the road is to be built over such land as "may be necessary for the public accommodation." But the public accommodation here intended is necessarily limited by the general purpose of the legislature, which was to authorize a railway from Derry Depot, through the four towns mentioned, to the Massachusetts line. For the accommodation of the public upon that route, authority was conferred to condemn and appropriate such property as was necessary. The public to be benefited by the railway, described generally in the charter as being partly in Londonderry, was not alone the people residing in that town, but also the general public who might desire to use that line of travel. In other words, the "public accommodation," which is made a test of location of the road through the town, relates primarily to the general public, whose convenience, the legislature determined, required a street railway extending through the several towns mentioned. If, as is admitted, the general route established by the legislature crosses a single corner of the town of Londonderry, no authority exists for extending it by a loop or otherwise to the diagonally opposite corner, merely for the convenience of people living in that section of the town. This construction of the charter is in accordance with the primary purpose of the legislature,

and shows that there was no intention to authorize a local railway system in each of the four towns through which the principal or main line was to run.    The public good ascertained by the legislature required a railway from Derry to the state line ; and the public good to be ascertained by the selectmen requires such a location thereof as will reasonably accommodate the public.

Whenever authority has been granted to establish a street railway in a town or city by a special charter which delegated to local officers, without restriction, the duty of determining the particular streets or highways to be occupied by it, the language used has been reasonably plain; and whenever it has seen fit to limit the franchise granted to the construction of a railway over a general route to be made specific and definite by the action of the local authorities, its intention has been expressed with equal clearness.    For examples of the former class the following charters may be referred to : Nashua Street Railway, Laws 1885, *c.* 192 ; Keene Street Railway, Laws 1887, *c.* 211 ;  Portsmouth Horse Railroad, *Ib., c.* 219 ; Littleton Street Railway, *Ib., c.* 271 ; Exeter Street Railway, Laws 1889, *c.* 218 ; Union Street Railroad, *Ib., c.* 241 ; Bristol Street Railway, Laws 1893, *c.* 249 ; Claremont Street Railway, Laws 1899, *c.* 159.    The charters of the following street railways seem to establish general routes, in some cases authorizing branch lines : Manchester Horse Railroad, Laws 1864, *c.* 3030 ; Exeter Horse Railroad, Laws 1870, *c.* 61 ; Nashua Horse Railroad, Laws 1871, *c.* 86 ; Concord Horse Railroad, Laws 1878, *c.* 118 ; Dover Horse Railroad, Laws 1881, *c.* 251 ; Franklin Horse Railroad, Laws 1883, *c.* 255 ; Massabesic Horse Railroad, Laws 1887, *c.* 274 ; Rochester Street Railroad, Laws 1889, *c.* 178 ; Hampton Street Railway, Laws 1891, *c.* 293 ; Gilmanton & Barnstead Electric Railway, Laws 1899, *c.* 160 ; Meredith & Ossipee Electric Railway, *Ib., c.* 161 ; Mont Vernon & Milford Electric Railway, *Ib., c.* 162 ; Haverhill, Plaistow & Newton Electric Railway, Laws 1901, *c.* 228 ; Portsmouth & Exeter Street Railway, *Ib., c.* 229 ; Newport & George's Mills Electric Railway, *Ib., c.* 239 ; Ashland & Asquam Electric Railway, *Ib., c.* 240 ; Manchester & Haverhill Street Railway, *Ib., c.* 241 ; Concord, Dover & Rochester Street Railway, *Ib., c.* 250 ; Keene, Marlow & Newport Electric Railway, *Ib., c.* 261 ; Seabrook & Hampton Beach Street Railway, *Ib., c.* 262.    The charter of the defendant is not distinguishable, upon the point now under consideration, from the charters last above mentioned, which provide for a general route from town to town or between definite termini, and in this respect it differs from the charters of the class first mentioned, which seem to authorize a practically unlimited layout within the boundaries of a particular town or city.    That the legislature, by authorizing a railway line

extending through several towns upon a general route indicated by termini, did not intend by implication to authorize the establishment of several local town systems, whenever the local convenience might demand it, is reasonably clear from an examination of the numerous street railway charters that have been granted.

As further evidence in support of this conclusion, it is significant that the defendant's charter does not authorize the construction of branches or extensions of the indicated line. The absence of express authority for that purpose indicates an intention to restrict the franchise to the specified route, — not to extend it to all parts of the several towns. Such authority is sometimes granted in connection with a general route (see Laws 1864, *c.* 3030, *s.* 1; Laws 1878, *c.* 118, *s.* 1), but when not expressly granted its existence is not ordinarily inferred. Laws 1895, *c.* 27, *s.* 3; P. S., *c.* 156, *ss.* 18–20.

Section 2 of the defendant's charter provides that " said railroad shall be laid out by the selectmen of said towns in like manner as highways are laid." As the legislature has determined that the public good requires a railroad over a certain general route, the selectmen are authorized to lay out " said railroad." The proposed route from Londonderry village to the Manchester line constitutes no part of " said railroad " as prescribed by the charter, and is not an authorized branch. The plaintiff is therefore entitled to an order preventing the building of the railway upon that route.

*Judgment for the plaintiff.*

All concurred.