MAURICE RENTNER, Plaintiff, *v.* MORRIS SIGMAN, Individually and as President of the INTERNATIONAL LADIES GARMENT WORKERS' UNION, an Unincorporated Association Having over Seven Members, and Others, Defendants.

Supreme Court, New York County, March 18, 1926.

**Trade unions — picketing — right of employees to strike and picket unquestionable as long as neither accomplishes illegal purpose — evidence shows strikers gathered daily in front of building in which plaintiff's business was located and interfered with his employees — temporary injunction continued and number of persons engaged in picketing at three entrances to building restricted.**

The right of employees to strike is unquestionable in this State. Similarly, picketing is lawful. But neither striking nor picketing may be availed of to accomplish a purpose which is clearly illegal.

Accordingly plaintiff, a manufacturer against whom the defendant trade union, of which some of plaintiff's former employees are members, ordered a strike, is entitled to the continuation of a temporary injunction and the limiting of the number of persons engaged in picketing at the three entrances to a building occupied by plaintiff as a factory to fourteen, where the evidence shows that large numbers of strikers and their sympathizers gather daily at the various entrances to the building and call epithets and that their mere presence in front of the building interferes with plaintiff's employees in going to and returning from their work in such a manner as to constitute an unreasonable invasion of plaintiff's rights in carrying on a lawful business in a legitimate way.

The fact that from 6,000 to 10,000 workers pass through the same three entrances daily, when considered with the fact that plaintiff's employees number approximately 300, necessarily restricts the opportunity of picketing and warrants the limitation of the number engaged.

APPLICATION to continue temporary injunction in suit by manufacturer against trade union.

*William Klein,* for the plaintiff.

*Morris Rothenberg,* for the defendants.

BIJUR, J.   This is an application to continue a temporary injunc-tion *pendente lite* in a suit brought by a manufacturer against a trade union of which some of his former employees are members. Upon the briefs and the somewhat extended argument with which I have been favored, I do not find any very serious disagreement between counsel as to the fundamental questions of law involved. It cannot be be gainsaid that in this State at least the right of employees to " strike," as it is ordinarily called, is established beyond question.   (*National Protective Assn.* v. *Cumming,* 170 N. Y. 315; *Bossert* v. *Dhuy,* 221 id. 342.)   Similarly, picketing is recognized as perfectly lawful.   (*Reed Co.* v. *Whiteman,* 238 N. Y. 545.)   With the economic or business merits of the underlying industrial dis-pute the courts have ordinarily no concern.   Of course, neither striking nor picketing, however narrowly or broadly we may con-strue those terms (see *Gill Engraving Co.* v. *Doerr,* 214 Fed. 111, 115; *American Foundries* v. *Tri-City Council,* 257 U. S. 184, 204–207), may be availed of to accomplish a clearly illegal purpose.   (*Auburn Draying Co.* v. *Wardell,* 227 N. Y. 1.)   In reference to conspiracy or combinations Mr. Justice PITNEY, in *Duplex Co.* v. *Deering* (254 U. S. 443, 465), says: " If the purpose be unlawful it may not be carried out, even by means that otherwise would be legal; and although the purpose be lawful, it may not be carried out by crim-inal or unlawful means."   Industrial disputes in this respect differ in no wise from other phenomena of social life.   (*Lamb* v. *Cheney & Son,* 227 N. Y. 418; *Beardsley* v. *Kilmer,* 236 id. 80; *American Bank & Trust Co.* v. *Federal Bank,* 256 U. S. 350; *Allen* v. *Flood,* L. R. [1898] App. Cas. 1; *Quinn* v. *Leathem,* L. R. [1901] App. Cas. 495.)   The interposition of courts of equity in industrial disputes, which has so frequently been the source of praise or criticism, accord-ing to the point of view of the critic, is to be determined substantially by no other test than is applicable to any other case.   It is need-less to repeat that ordinarily an injunction will not be issued merely to enforce the criminal law.   (*Gill Engraving Co.* v. *Doerr, supra,* 118.)   On the other hand, it was said in *Matter of Debs* (158 U. S. 564, 583), quoting from *Borough of Stamford* v. *Stamford Horse R. R. Co.* (56 Conn. 381), that " In some cases of nuisance and in some cases of trespass   *   *   *   the law is well pleased if the individ-ual will consent to waive his right to the use of force [to abate the one and prevent the other] and await its action," and the United States Supreme Court continued (at p. 593): " Something more than the threatened commission of an offense against the laws of the land is necessary   *   *   *.   There must be some interferences, actual or threatened, with property or rights of a pecuniary nature, but when such interferences appear the jurisdiction of a court of

equity arises and is not destroyed by the fact that they are accompanied by or are themselves violations of the criminal law." In the *American Foundries Case* (*supra*, 203, 204) the same court, after discussing and affirming the right of men by " persuasion or communication with those whom they would enlist with them " to accost others " in an inoffensive way," and particularly " to communicate and discuss information with a view to influencing the other's action," continues: " If, however, the offer is declined, as it may rightfully be, then persistence, importunity, following and dogging become unjustifiable annoyance and obstruction which is likely soon to savor of intimidation. From all of this the person sought to be influenced has a right to be free *and his employer has a right to have him free.*" Plaintiff conducts a manufactory consisting of two " shops," one on the seventh and the other on the eighth floor of a very large building known as the Garment Center Capitol. Until quite recently the relations between plaintiff and the union seem to have been proceeding amicably, but a disagreement occurred relating to plaintiff's claim of absence of satisfactory productivity on the part of some of the union employees and his discharge of one or more of them on various grounds. The matter was by consent referred to Dr. Henry Moskowitz as " impartial arbitrator." He rendered a decision, and it is an open question which certainly cannot be decided on the papers before me whether it is the fault of the plaintiff or the union, or both, that full effect was not given to the award. The present difficulty is the result. Upon the fact that the shop on the seventh floor was occupied by union employees and the shop on the eighth by non-union workpeople, plaintiff apparently bases the contention that there is no strike in progress against him and that *consequently* picketing is unlawful. It would serve no useful purpose in the present instance to discuss the question of law whether the conclusion sought to be drawn is warranted by the premises or whether statements in one or two opinions, substantially to the effect that in the absence of a strike picketing is unlawful, are not to be limited to the facts of those cases and intended merely to indicate the absence of *any* lawful purpose for the picketing there involved. It is evident that a strike is in progress against plaintiff and that at least one of its material causes is plaintiff's insistence on conducting a union and a non-union " shop " at the same time and in the same building. A large part of the moving and answering papers relates to the industrial merits of the controversy between plaintiff and defendant union with which I have no concern. They are matters of social, not of judicial, cognizance. Plaintiff submits a number of affidavits in reference to alleged threats and minor acts of violence respectively by persons claimed to be connected with

Supreme Court, March, 1926. [Vol. 126

defendant union. Many of these are so vague and the parties involved so largely unidentified as not to merit serious consideration as importing a charge against the defendant or its members. In a number of cases where the alleged assailants have been identified there is point-blank and satisfactory denial. In one instance in particular the refutation is so complete as to indicate that the charge was wholly baseless. A large number of arrests have been made by the police, but substantially these comprise only two incidents in which wholesale arrests were made. It sufficiently appears that a considerable proportion of the persons arrested were not members of the union and in large part not even known to its officers. The charge sustained against these groups was apparently in the one case where sentence was suspended, " shouting the word ' scab ' and refusing to move on, thereby causing a large crowd to collect." In the other, while the same charge was made, the police magistrate found the group guilty of " an unreasonable use of the street " and inflicted an individual fine of five dollars. The two groups arraigned were arrested respectively by one or two officers, and the circumstances of the arrest indicate that, while their conduct on " the picket line " may have been disorderly, they submitted to arrest in a perfectly peaceful manner, and there is no claim that they attempted any form of personal violence. The struggle in progress between plaintiff on the one hand and the defendant union and its members on the other is recognized by each side as of a serious nature. Plaintiff believes that he is acting in the best interests of the business which he owns and conducts; defendant's members are evidently endeavoring to obtain such degree of control over and permanence of their employment as will accord to them something analogous to a property right in their means of livelihood. Where interests so fundamental are at stake it is not surprising that there should be intensity in the struggle and more or less bitterness in its conduct. The perhaps natural result is an occasional act of disorder which, however reprehensible, may not properly be taken as a measure of the conduct of the union. In view, however, of the constant danger that such outbreaks may occur, the officers of the union should be unwilling to content themselves with mere forbiddance and condemnation in general terms, but should take active steps to discipline any of its members against whom such conduct can be proved. I come, then, to the picketing, which appears to be the gravamen of plaintiff's grievance. The name " picket " itself has been criticised in the *American Foundries Case* (*supra*, 205) as indicating " a militant purpose, inconsistent with peaceable persuasion." We are dealing, however, as the court there also recognized, not with words or labels, but with sub-

stantial facts. So-called pickets have been employed in a number of public movements having no relation to labor troubles, and on election days the employment of "missionaries" (Id. 207) by the respective parties with all the characteristics of a picketing movement, is so common as to be within the knowledge of every citizen. Whether their employment in labor disputes is effective under all the circumstances of the case is not for me to determine. The unions have the undoubted right to avail of that method of propaganda, provided always that it is peaceful in the broad sense of the word, for manifestly the law cannot tolerate any other method. I think that it appears quite clearly that large numbers of strikers and their sympathizers assemble daily at the various entrances of the very large building in which plaintiff occupies a portion of two floors, and by the calling of epithets and their mere presence in large numbers interfere with the employees of the plaintiff when going to and returning from their work, to an extent which constitutes an unjust invasion of plaintiff's rights in the legitimate carrying on of his lawful business. The police have established a rational and reasonable limitation upon this " picketing," which if observed would afford the union a fair opportunity to communicate (so far as personal communication at such times is feasible) with the workers, and at the same time be free from the objection of interference with public travel in the streets or undue aggression upon plaintiff's business and the necessary freedom from annoyance to which his employees are entitled. Rights of argument and persuasion must be enjoyed by the members of the union with due regard to the privileges of all other citizens, and each case presents in this respect a problem of its own. (*American Foundries Case, supra,* 206; also *Reed Co.* v. *Whiteman, supra.*) The three entrances to this large building are not in a strict sense entrances to the factory or workshops of the plaintiff on the seventh and eighth floors respectively, but are only means of approach thereto. The building is used by from 6,000 to 10,000 people daily. Opportunity, therefore, to meet and address on the street any of the workers in plaintiff's employ (who at the maximum number only about 300) is exceedingly limited. In the absence of any other concrete suggestion, I am persuaded that the informed judgment of the police should be followed in this matter, and that defendants should be enjoined from maintaining at any time more than six pickets or other representatives at the main entrance on Seventh avenue, and four at each of the side entrances to the building on Thirty-sixth and Thirty-seventh streets, respectively.

Settle order accordingly on notice.