*28 Vroom.*                    Kennelly v. Jersey City.

THE STATE, JOHN KENNELLY ET AL., PROSECUTORS, v. THE MAYOR AND ALDERMEN OF JERSEY CITY AND THE NORTH HUDSON COUNTY RAILWAY COMPANY.

1. The trolley system of propelling street cars, as at present used for the transportation of passengers through the streets of a city, is within the public easement over urban highways.

2. When private rights are not involved in the acts of public agents, notice to private persons is not absolutely essential to the legality of those acts.

3. When a statute expressly authorizes a municipal board to designate the number of street railway tracks that shall be laid in any street, lane or avenue of the city, the court cannot set aside as unreasonable an ordinance which authorizes the laying of double tracks.

4. When the statute forbids the laying of any railway tracks in any street, unless the consent of the governing municipal board be first obtained, the board must know what particular tracks are to be laid before it gives consent.

5. The general rule is that the word "may" imposes a duty whenever it is employed in a statute to delegate a power, the exercise of which is important for the protection of public or private interests. The word is so used in the act of March 11th, 1893. *Pamph. L., p.* 241.

6. The owners of the fee simple of land in a street may prosecute a *certiorari* to test the legality of a municipal ordinance purporting to authorize a railway company to place rails, poles and wires on their land in the street.

On *certiorari.*

Argued at June Term, 1894, before Justices DIXON, REED and ABBETT.

For the prosecutors, *Charles L. Corbin* and *Gilbert Collins.*

For the defendants, *Abram Q. Garretson.*

The opinion of the court was delivered by

DIXON, J.  The board of street and water commissioners of Jersey City having, on March 5th, 1894, passed an ordinance giving the North Hudson County Railway Company

permission to lay tracks, erect poles and string wires on several streets of the city, among them Grove street, from Pavonia avenue to the Hoboken line, the prosecutors, owning property on that street, sued out this *certiorari* to test the legality of the ordinance.

A fundamental question, lying at the basis of matters which we must consider in passing upon the objections of the prosecutors, is whether the trolley system of propelling street cars, involving, as it does, the erection of poles and wires on land the fee of which is private property, is within the public easement over urban highways.

In our judgment it is. That easement includes the right to use the street for purposes of passage by the public, and therefore to employ any means directly conducive to that end which do not substantially interfere with the customary use of the street by any portion of the public or with the recognized rights of abutting owners.

The cars propelled by the trolley system do not materially differ, either in appearance or use, from the ordinary horse cars; they are permitted to go along the streets in such manner only as is compatible with the customary modes of travel by others of the public (*Newark Passenger Railway Co.* v. *Block*, 26 *Vroom* 605), and the tracks, poles and wires cause no greater detriment to adjoining property than do the tracks, sewers, pipes, posts and trees which, indisputably, the public may authorize to be placed in the streets. These considerations, we think, lead to the conclusion reached by the learned Vice Chancellors of this state in *Halsey* v. *Rapid Transit Street Railway Co.*, 2 *Dick. Ch. Rep.* 380, 391, and *Paterson Railway Co.* v. *Grundy*, 6 *Id.* 213, 228, and by the learned Chancellor in *West Jersey Railroad Co.* v. *Camden, Gloucester and Woodbury Railway Co.*, 7 *Dick. Ch. Rep.* 31, that the adoption of the trolley system for the conveyance of passengers through the streets of a city does not necessitate the invasion of any private right.

We proceed now to examine the objections presented by the prosecutors.

The first is that the ordinance was passed without notice to the owners of property along the line of the street.

It is impossible to frame a universal rule for determining when individuals are absolutely entitled to notice of the proceedings of public agencies. Like "due process of law," it seems to be a mixed question of abstract justice and established usage. Sometimes it is said that such notice is requisite in all judicial proceedings, but not in those which are legislative or ministerial. With regard, however, to the acts of corporate bodies invested with governmental powers, these terms are often very shadowy, and sometimes appear to be applied to such acts merely on a hypothesis that notice to private persons is or is not deemed essential. Generally, I think, it may be said that when private rights are involved, notice must be given to the parties interested. Yet not always; for the question whether the power of eminent domain shall be exerted over the property of A or of B is conclusively decided without notice to either, although that certainly involves private rights. The counterpart of the general rule above suggested is, I believe, of universal application, that, when private rights are not involved, notice to private persons is not essential.

The matters dealt with in the ordinance now under review, and of which complaint is made, the adoption of the trolley system and the laying of double tracks in the street, do not involve private rights.

It may be that the legitimate use of the street by the abutting owners will interrupt the passage of cars upon double tracks more frequently than it would if there were only a single track, but, as we have seen, the private right will not, on that account, be diminished; the public using the tracks must put up with the interruption. *Rafferty* v. *Central Traction Co.,* 147 *Pa. St.* 579. If this ordinance defined the position of the poles, and thus determined whether the possible inconvenience which they might occasion should be borne by one abutting owner rather than another, then perhaps, as is intimated in the equity cases before mentioned,

private rights would be so concerned as to require notice; but the ordinance attempts no such location.

Notice therefore was not necessary, unless prescribed by the statutes under which the municipal authorities were acting. These statutes are the charter of the Jersey City and Hoboken Horse Railroad Company (*Pamph. L.* 1859, *p.* 550), an act transferring all its powers, privileges and franchises to the North Hudson County Railway Company (*Pamph. L.* 1874, *p.* 1264), and a supplement to "An act concerning street railroad companies" (*Pamph. L.* 1893, *p.* 241). None of these acts directs notice to be given.

The prosecutors' next objection is that the company has not filed a map or survey of its route. The complete answer is that none need be filed. *Pamph. L.* 1874, *p.* 1264, § 4.

Another objection is that in authorizing a double track the ordinance is unreasonable, in view of the narrowness of the street and its other uses. The act of 1859, above referred to (*Pamph. L., p.* 550, § 7), expressly empowers the city authorities to designate the number of tracks that shall be laid in any street, lane or avenue of the city. This delegation of power is too specific to permit the court to overturn the ordinance on the ground stated. *Haynes* v. *Cape May*, 21 *Vroom* 55; *Trenton Horse Railroad Co.* v. *Trenton*, 24 *Id.* 132.

It is further objected that the ordinance, in empowering the company to construct "any and all necessary curves, sidings, crossovers and switches, that may be required for the proper, safe and economical operation of the railway," is unreasonably vague, and delegates a discretion which the municipal board itself was bound to exercise.

This objection is valid. The act of 1859, section 7, and the act of 1874 (*Pamph. L., p.* 1264, § 3), forbid the laying of any track or tracks along any street, unless the consent of the governing municipal body be first obtained. We think this language fairly implies that the public body shall know what particular tracks the company proposes to lay before it determines whether it will consent or not. Only in this way

can the public representatives give to public interests that protection which the legislature designed.

The last objection to be considered is that the ordinance does not prescribe the manner in which or places where the poles shall be located, or the manner in which wires shall be strung thereon.

This objection rests upon the third section of the supplement of 1893, before mentioned (*Pamph. L., p.* 241), which enacts that the municipal authorities may, when they deem it proper, authorize the use of poles to be located in the public streets, with wires, &c., "and when a board grants such authority it may in such case prescribe the manner in which and the places where such poles shall be located, and the manner in which the wires shall be strung thereon, and the same may be authorized and prescribed by ordinance."

The question at once arises whether the language, "it may in such case prescribe the manner," &c., imposes a duty on the public body, or merely clothes it with a discretionary power.

Ordinarily the word "may" implies permission only, but often it is construed to be mandatory. It is noticeable that in this very section the term is used in both senses. In the first clause, that the municipal authorities may, when they deem it proper, authorize the use of poles, &c., it clearly was intended to vest the authorities with discretionary power; while in the last clause, "and the same may be authorized and prescribed by ordinance," the term is mandatory, and in no other mode can the power be exercised. The sense of the word in the middle clause now under consideration is less clear, but I think it is mandatory. The general rule is that this force will be given to the word whenever it is employed in a statute to delegate a power, the exercise of which is important for the protection of public or private interests. *Sedgw. Stat. & Const. L.* 438; *New York* v. *Furze,* 3 *Hill* 612; *Central Land Co.* v. *Bayonne,* 27 *Vroom* 297; 14 *Am. & Eng. Encycl. L.* 979. It is undoubtedly of importance to public interests that the poles and wires which are to convey so dangerous an

agent as electricity through the public streets should be properly placed and constructed. This is not secured by the provisions of this ordinance, which merely require the poles to be erected on the sidewalk adjacent to the curb-line, and the wires to be suspended seventeen feet above the grade of the street. For this reason also the ordinance is illegal.

The defendants suggest that the prosecutors have no standing to question the legality of the ordinance. But when it is remembered that the railway company is intending to place tracks, poles and wires upon the lands of the prosecutors, and that it has no right to do so, except under public authority lawfully conferred, it becomes evident that the prosecutors are entitled to question the legality of the authorization. *Read* v. *Camden*, 25 *Vroom* 347.

So far as it purports to affect the lands of the prosecutors the ordinance must be set aside.