THE STATE, THE CAPE MAY, DELAWARE BAY AND SEW-
ELL'S POINT RAILROAD COMPANY, PROSECUTOR, v.
THE CITY OF CAPE MAY, THE CITY COUNCIL OF CAPE
MAY ET AL.

1. The right to grant to a street railway company permission to construct
   its tracks and operate its road in the streets of the city of Cape May,
   is vested, by the city charter and other statutes, in the mayor and city
   council by ordinance, and without an ordinance conferring such right
   the construction and operation of such a railway would be unlawful.
2. If sidings or turnouts are provided for in the ordinance, then only
   such as are so provided for can be constructed, and if none are provided
   for none can be constructed, and any extension of those provided for
   or connection between them would be illegal; and if the manner of
   construction be substantially changed, then the railway company can
   be dealt with as if no right of construction or operation had ever been
   granted at all, and the unlawful construction can be removed as an
   obstruction, without judicial intervention, by the summary action of
   the municipal authorities having the control and regulation of the
   streets.
3. Where a street railway company has, in good faith, constructed its
   tracks, sidings and turnouts upon a street, by virtue of an ordinance,
   under which it claims it had the right to construct in the manner
   adopted, and such construction was made without objection by the
   municipal authorities, before an ordinance can be enacted which deter-
   mines adversely the right of such construction on the part of the com-
   pany, and provides for a summary removal of its tracks, turnouts or
   sidings, notice must be given to the company and an opportunity for a
   hearing be afforded. Without such notice and opportunity for hear-
   ing before the enactment of the ordinance, the proceedings for its
   enactment and the ordinance will be adjudged invalid and set aside.

On *certiorari*.

This *certiorari* brings up for review a certain resolution
and ordinance of the city of Cape May. The resolution was
adopted by the city council of the city of Cape May, June
4th, 1895, and is as follows:

" WHEREAS, The Delaware Bay, Cape May and Sewell's
Point Railroad Company, without the sanction or authority
of the city council, on the 28th day of May last, made an'

extension of its road by laying an additional track on Beach avenue, from the Sea Breeze Hotel westward to the end of Beach avenue drive, a distance of about fifteen hundred feet, the effect of which is injurious to said Beach avenue and the right of the traveling public; therefore, be it

"*Resolved*, That the said railroad company be notified and requested by the street committee to remove said extension at once, and if they shall refuse to comply with such notice and request, that said committee shall be empowered and directed to employ counsel and take legal measures in behalf of the city to enforce the same."

The ordinance was adopted by the city council on June 13th, 1895, and is as follows:

"An ordinance relating to the railroad encroachments and obstructions on Beach avenue.

"Section 1. Be it ordained and enacted by the inhabitants of the city of Cape May in city council assembled, and it is hereby enacted by the authority of the same, that the extension to their street railroad which the Cape May, Delaware Bay and Sewell's Point Railroad Company made on the 28th day of May, 1895, on Beach avenue, from the Sea Breeze Hotel westward to the end of Beach avenue drive, without sanction or authority of the city council, is an unlawful obstruction and encumbrance in and upon said avenue; and the street committee is hereby authorized and directed to remove the same, and the mayor of the city is hereby requested to aid and assist the said committee in the enforcement of this ordinance according to the duty imposed upon him by the city charter."

Section 2 of this ordinance provides that it shall take effect immediately.

Under the General Railroad law of this state, the Delaware Bay and Cape May Railroad Company was incorporated in the year 1879; the Cape May and Schellinger's Landing Rail-

road Company was incorporated in the year 1881, and the Cape May and Sewell's Point Railroad Company was incorporated in the year 1880. After these incorporations, the Schellinger's Landing railroad, under foreclosure proceedings, purchased the Sewell's Point railroad. These railroads became consolidated under the name of the Cape May, Delaware Bay and Sewell's Point Railroad Company, and filed the map of its road in the office of the secretary of state as the true location of such railroad. This location includes Beach avenue, in the city of Cape May, upon which street it is operated as an electric street railway by virtue of an ordinance adopted by the city council of the city of Cape May and approved by the mayor on June 29th, 1892. This latter company is the prosecutor of this writ, and it contends that all tracks, with all turnouts and sidings, up to the time of the suing out of this writ, were constructed by virtue of the grant or license of the ordinance of June 29th, 1892, and in accordance with the terms thereof. The track along Beach avenue was constructed in the year 1893. It consisted of a single track on Beach avenue. At that time the company constructed a siding or turnout at, about or abreast of what is known as the Sea Breeze Hotel, on Beach avenue, of nearly five hundred feet in length, and another siding or turnout, of about the same length, on the same street below an intersecting street called Broadway. On or about the 28th of May, 1895, it lengthened these two turnouts or sidings, which were about five hundred feet apart, until they came into connection with each other, thus rendering it one siding or turnout or double track of about fifteen hundred feet in length. This addition of track gave rise to the resolution and ordinance now under review, the city council claiming that such connection or extension, as it is called in the ordinance, was not within the terms of the ordinance of June 29th, 1892, and therefore unlawful.

The ordinance of June 29th, 1892, was offered in evidence as "An ordinance giving consent to the Cape May and Schellinger's Landing Railroad Company to lay and operate its

railroad and regulate the same, approved June 29th, 1892." No copy of it has been included in the return to the writ or submitted in the evidence.

Argued at November Term, 1895, before Justices GARRISON and LIPPINCOTT.

For the prosecutor, *Edward Ambler Armstrong.*

For the defendants, *David J. Pancoast.*

The opinion of the court was delivered by

LIPPINCOTT, J.   The prosecutor of this writ, a railroad corporation organized under the general laws of this state, is in the operation of an electric street railway for the carriage of passengers in the city of Cape May, under and by virtue of an ordinance approved June 29th, 1892.

There is no contention on the part of the street railway company that it is vested with any power to operate a street railroad on Beach avenue, in the city of Cape May, without the consent of the proper city authorities.

The right to grant the license or permission to use this street for this purpose is vested in the city council, and without such consent it is conceded that its use would be unlawful.   This power is vested in the city council by the charter. *Pamph. L.* 1875, *p.* 206, § 19.   Reference is also made to *Pamph. L.* 1886, *p.* 185; *Rev. Sup., pp.* 364, 365, § 4; *Pamph. L.* 1893, *p.* 144, § 1; *Pamph. L.* 1894, *p.* 374.

The prosecutor, in the operation of a street railway, can, in the city of Cape May, exercise no greater or other rights than those conferred by the ordinance of June 29th, 1892, nor could it construct its road or tracks in any other mode than is provided by that ordinance, and if this connection or extension of its sidings or turnouts originally constructed on this street was not within the terms of that ordinance, or was contrary to its prohibitions, then such connection formed an unlawful obstruction and encumbrance upon said street and rendered the railway company subject to its removal by some

proper form of legal procedure. The ordinance granting the consent to construct must be strictly followed in the preservation of the public right to the highway. If sidings or turnouts are provided for in the ordinance, then only such as are so provided for can be constructed, and if none are provided for, then none can legally exist, and any extension of those provided for, or connection between them, would certainly be outside the provisions of the ordinance and an unjustifiable interference with public right.

The ordinance, if it does not contain certainty as to the construction of tracks, curves, sidings, turnouts and other requirements for the street railway, would be invalid. *Kennelly* v. *Jersey City*, 28 *Vroom* 293. In these respects the ordinance must not be vague, and if it is so it can give no right of construction whatever. *Ibid.* The protection of the public right requires this degree of certainty.

The tracks must be constructed in the streets on the lines which have been designated in the ordinance, and no other lines can be followed. *West Side Street Railway Co.* v. *Barnard*, 48 *Hun* 57. The provisions of the ordinance are held to be mandatory and to be strictly followed. *Finch* v. *Riverside and Arlington Railway Co.*, 87 *Cal.* 597, 600. This rule is enforced with the same strictness when applied to turnouts, side tracks or switches, which cannot be constructed unless authorized by ordinance or statute. *Concord* v. *Concord Horse Railroad*, 65 *N. H.* 30. I understand these rules to have been laid down by Mr. Justice Dixon in *Kennelly* v. *Jersey City, supra*, and besides, the ordinance, in order to be a valid warrant for the construction of a street railway, must have certainty in these respects.

Now, it must follow that this permission by ordinance to construct and maintain a street railway according to a given construction and upon a given location, can confer no authority to construct according to another mode or upon another location, and if another method of construction is undertaken or another location attempted to be occupied, the railway company can be dealt with precisely as if no right of way or right

of construction and operation had ever been granted at all. And without speaking at all of the many other remedies which can be applied to correct such a situation, I think it is clear, both by reason as well as by authority, that the tracks, switches, turnouts or sidings or other unauthorized constructions may be removed without judicial intervention. The usual ordinary police intervention can be had, or it can be accomplished by the action of the constituted municipal authorities having the control over the streets. *Stamford* v. *Stamford Railroad Co.*, 56 *Conn.* 381. It is apparent that such a rule is salutary and one perhaps often necessary to be invoked for a full as well as beneficent measure of protection to the public in these days when it too often happens that the public highways are taken possession of without legal right and in disregard of constituted municipal authority.

We are not unmindful of the existence of cases which require judicial intervention in order to settle disputed claims of right. These cases are easily distinguished from those in which the usurpation or violation of law is at once apparent, for it is only in these latter cases that the summary police intervention is justifiable. *New York and Long Branch Railroad Co.* v. *South Amboy*, 28 *Vroom* 252.

There are many reasons urged for the reversal of the resolution and ordinance under review which have not been considered or determined.

The infirmity presented by the first reason of the prosecutor is that the resolution, which is only a tender to the ordinance, and the ordinance were enacted without notice to the prosecutor or opportunity to be heard in the matter. The resolution and ordinance were adopted without notice to the prosecutor and without affording an opportunity for a hearing. ..

The return and evidence show this to be true, and under the circumstances of this case this omission renders the proceedings of the city council in the matter fatally defective. This error is a fundamental one.

The street railroad company, it is conceded, laid its track and these two turnouts or sidings previous to May 28th,

1895, under the grant of the ordinance of June 13th, 1892. This track and the sidings had existed there, and had been in use by the company, without objection on the part of the city council, from the early part of 1893. On May 28th, 1895, as appears by the evidence, the company connected these two sidings. This connection was made in the usual manner and without device or concealment, and the company contends that it was done in conformity to the provisions of the ordinance of 1892. This ordinance is not before the court, but it is noticeable that the defendants do not, in the evidence, dispute the contention of the company, nor do they by any proof attempt to show that it was not in conformity to the ordinance under which the prosecutor claims. It is true that the ordinance of removal of June 13th, 1895, declares that it was made without the consent of the city council, but beyond this assertion no proof exists disputing the position of the railway company. The construction was not such as actually excluded the public from the use of the street to any extent whatever, and at the time of the passage of the resolution and ordinance under review the company was in the operation of the street railway upon this connection or extension. There is nothing in the case to show that the construction was not made in good faith.

Under these circumstances and the *status* acquired by the prosecutor, the adoption of the ordinance of the character of the one in question was an adjudication that this *status* was an unlawful obstruction and encumbrance upon the avenue upon which this construction or extension had been made, and the force and effect given to such adjudication was that it should at once be forcibly and summarily removed, and this adjudication at once deprived the railway company of the right to further operate its street railway over this extension and extinguished the *status* by it before that time acquired.

The proceedings of the city council in the adoption of this ordinance were taken without any notice whatever to the prosecutor. Conceding the ordinance to be one within the general powers of the city council to adopt by a legal pro-

ceeding, yet the proceeding was one resulting in an adjudication of the legal rights of the prosecutor. The exercise of its franchise as well as its rights of private property were called in question by these proceedings, and the result was an adjudication that the prosecutor be summarily divested of both. It must be manifest, upon reason as well as by authority, that such a proceeding, leading to such a determination, so conclusively and effectively detrimental to the rights of the prosecutor, should not have been taken without reasonable notice to the prosecutor and an opportunity for it to be heard in relation to the subject-matter. The validity of such a determination must be made, among other essential requisites, to depend upon notice and opportunity to be heard. The proceeding was one directly aimed at the prosecutor and involved private rights, and the ordinance had an immediate effect, which was both summary and forcible, in the removal of the tracks of the company and the suspension of the operation of its road. *Attorney-General* v. *Chicago and Evanston Railroad Co.*, 112 *Ill.* 520.

The municipal authorities cannot legally substitute their arbitrary judgment for a judicial declaration of forfeiture. *Easton* v. *South Easton and West End Passenger Railway Co.*, 133 *Pa. St.* 505; *Asheville Street Railway Co.* v. *Asheville*, 109 *N. C.* 688; *Stevant* v. *Ashtabula*, 2 *St. Ry. Rev.* 186. In such cases there must be notice, either actual or constructive (in accordance with the charter), or prior legal proceedings. 1 *Dill. Mun. Corp.* (*4th ed.*), *p.* 418, §§ 348–350.

Where the ordinance affects a property right it is necessary to give actual notice, or prescribed constructive notice, to owners as a prerequisite to its adoption. *Athletic Association* v. *New Brunswick*, 26 *Vroom* 279; *Kennelly* v. *Jersey City*, 28 *Id.* 293, 295.

It is clear that the proceedings of the city council in the enactment of this resolution and ordinance, being without notice to the prosecutor, were without legal warrant.

The proceedings of the city council in the adoption of the ordinance and the resolution and ordinance must be set aside, with costs.