THE STATE, THE CAPE MAY, DELAWARE BAY AND SEW-ELL'S POINT RAILROAD COMPANY, PROSECUTOR, v. THE CITY OF CAPE MAY ET AL.

A city council, under the charter of the city which confers power upon the council to make ordinances to regulate the public streets; to prevent immoderate driving or riding; to provide the manner in which corporations or persons shall exercise any privilege granted to them in the use of the streets; to regulate the running of locomotive engines

and railroad cars therein, and to protect persons and property, is authorized to enact an ordinance that all passenger cars operated by trolley or electric power in the streets of the city shall have proper and suitable fenders on the front of such cars to prevent accident, and that it shall be unlawful to operate such cars in the streets of the city without such fenders.

On *certiorari.*

Argued at November Term, 1895, before Justices GARRISON and LIPPINCOTT.

For the prosecutor, *Edward Ambler Armstrong.*

For the defendants, *David J. Pancoast.*

The opinion of the court was delivered by

LIPPINCOTT, J.   On the 9th day of July, 1895, the city council of the city of Cape May passed the following ordinance, to wit:

"An ordinance requiring the use of fenders on all passenger cars operated by trolley or electric power in the streets of the city of Cape May.

"Section 1. Be it ordained and enacted by the inhabitants of the city of Cape May in city council assembled, and it is hereby enacted by the authority of the same, That hereafter all passenger cars operated by trolley or electric power in the streets of the city of Cape May shall have proper and suitable fenders on the front of said cars to prevent accidents, and that it shall be unlawful to operate street cars within the city without such fenders."

Section 2 provides a penalty for a violation of this ordinance, and section 3 provides that it shall take effect immediately.

This *certiorari* has been brought to review this ordinance.

The ordinance in this case was passed by the council in the manner prescribed by the city charter.

The city charter of the city of Cape May authorizes the city council thereof to enact ordinances to regulate the streets of the city; to provide for the manner in which corporations and persons shall exercise any privilege granted to them in the use of the same; to prevent immoderate driving or riding in the streets; to regulate the running of locomotive engines and railroad cars therein, and such ordinances as they may deem necessary for the good government, order and protection of persons and property. *Pamph. L.* 1875, §§ 19, 20; *Gen. Stat.*, *p.* 312.

The prosecutor is operating an electric street railway on the streets of the city of Cape May, under an ordinance granting it that privilege. *Cape May, &c., Railroad Co., pros., v. Cape May*, 29 *Vroom* 565.

It has been held at the present term of this court that ordinances passed by the city council, reasonably regulating the rate of speed at which the prosecutor shall run its cars through the streets, and also to compel it to make full stops before crossing intersecting streets, are valid regulations in the exercise of the police powers implied from the authority granted by the charter of the city to the council. Such ordinances being reasonable will be sustained.

It is difficult to perceive, in view of the statutory power conferred upon the city council, upon what ground this ordinance can be attacked as the improper exercise of the power of the regulation of the use of the streets for the protection of the traveling public.

The franchise or privilege of the prosecutor to operate its cars in the streets of the city, is founded upon the grant by the city. The reasonable control of this use of the streets of the city has not been divested by the ordinance under which the railway is operated. The grant was to use the streets with cars of the prosecutor propelled by electric power, a power capable of producing a high and dangerous rate of speed from which collision would result, perhaps, in probable

serious injury to others in the use of the streets. The law is well settled in this state that these street railways have no exclusive use of the streets, and not even the exclusive use of the tracks upon which the cars are operated. The legislative power to control and regulate the streets has been delegated to the governing body of the municipality, and it is under this power that the privilege has been conferred upon the prosecutor, and it is still within the power of the city council by invocation of this same legislative authority to so regulate the use of the streets as shall render their use by electric cars consistent with the safety of the general public from accident and injury. The ordinance can be tested only in view of the extraordinary propulsive power by which such cars are operated, and the danger arising from the high rate of speed which may be obtained, and other dangers incident from their operation in the streets; and reasonable regulations, in the shape of ordinances to protect the ordinary public travel upon the highways, have always been supported whenever questions as to the validity of such regulations have arisen.

The ordinance under review, in matter of principle, in nowise differs from ordinances regulating the rate of speed of the cars, or other ordinances owing their origin impliedly to the authority vested in the municipality to regulate the use of its streets. The legislature, when it authorized the use of the public streets for these purposes, was presumed to have intended that the grantee of the franchises should hold its privileges subject to such regulations as were reasonably necessary for the common use of the street for a street railway and for ordinary travel. *North Hudson County Railway Co.* v. *Hoboken,* 12 *Vroom* 71; *Traction Company* v. *Elizabeth,* 29 *Id.* 619. Nearly all kinds of reasonable regulations can be imposed upon street railways in the use of the streets by the municipality, under the authority granted by the legislature to pass ordinances to regulate the use of the streets, and such regulations are never declared unlawful on the ground that they impair the franchises of the companies.

The power granted to municipal bodies to legislate by ordinances is a grant to a subordinate body, and its legislative acts, when counter to the acts of the state legislature, must give way; but these companies, nevertheless, hold their franchises subject to such municipal regulations as do not unreasonably interfere with the exercise of the franchises conferred by the legislature. The franchises are exercised upon a public highway for the public benefit, which highway is acquired and improved for the benefit and advantage of the public at large. The position is different from that of a railroad company exercising its franchises upon a roadbed of its own. The grantee in the former case is subject to municipal regulations of a greater scope in the interest of the public at large than would be justifiable in the case of companies occupying and using their own roadbeds. *Traction Company* v. *Elizabeth, supra; Allen* v. *Jersey City,* 24 *Vroom* 522; *Trenton Horse Railroad Co.* v. *Trenton, Id.* 132; *Booth St. Ry. L.,* §§ 223, 239.

Under this power, ordinances regulating the use of the streets by street railways have become frequent, especially so since the introduction of electricity as a motive power, with its capacity for a high rate of speed, as well as for other dangerous and obstructive capacities. Their operation must be reasonably safe, reasonably consistent, and in harmony with the legal customary use of the streets by the general public, and ordinances to enforce this rule of law are reasonable in purpose and effect. Even direct legislative authority to a street railway company to carry passengers over the streets of a city does not exempt the corporation from municipal or police control. The principle is a general one, that when a business is authorized to be conducted by a corporation within a municipality the latter presumptively possesses the same right to regulate it that it has over a like business conducted by private persons. A grant to a corporation of the right to own property and transact business affords no immunity from any police control to which the citizen could be subjected, and a reasonable regulation of the enjoyment of

the franchise is not a denial of the right, nor an invasion of the franchise, nor a deprivation of its property or interference with the business of the corporation. The company is presumed to know that the business of operating a city street railway must be conducted under such reasonable rules and regulations as the municipality may impose, and subject to its share of the burdens incident to the conduct of the municipal government. *Dill. Mun. Corp.* (*4th ed.*), § 720; *Trenton Horse Railroad Co.* v. *Trenton, supra,* and cases cited; *Traction Company* v. *Elizabeth, supra.*

Ordinances regulating speed, and directing where stops should be made, have been held reasonable (*Dill. Mun. Corp.* (*4th ed.*), § 713; *Hanlon* v. *South Boston Horse Railroad Co.,* 129 *Mass.* 310; *Booth St. Ry. L.,* § 229); to compel the removal of earth falling on the track (*Pittsburg and Birmingham Passenger Railroad Co.* v. *Birmingham,* 51 *Pa. St.* 41); to compel a company to employ a conductor to assist the driver (*Trenton Horse Railroad Co.* v. *Trenton, supra*); to keep the street between the rails in repair (*North Hudson Railway Co.* v. *Hoboken,* 12 *Vroom* 71); to pass such ordinances as may be necessary for the common use of streets for a street railway and ordinary travel (*North Hudson Railway Co.* v. *Hoboken, supra*). The city can require a greater degree of care on the part of the company in running its cars, as a consideration for granting the franchise, than may be required by law towards one in the ordinary use of the street. *Fath* v. *Tower Grove and La Fayette Railway Co.,* 105 *Mo.* 537. Ordinances to compel cleaning and sprinkling tracks have been frequent and their validity sustained. *Booth St. Ry. L.,* § 230, and cases cited. Cars can be required to be run at certain hours and at fixed intervals, and to remove snow from the streets. *Broadway, &c., Railroad Co.* v. *Mayor,* 49 *Hun* 129. Ordinances have been upheld prohibiting the use of salt or saltpetre, or salt of any character, on the tracks. *Traction Company* v. *Elizabeth, supra.* The use of sand on the tracks can be prohibited by ordinance. *Dry Dock, &c., Railroad Co.* v. *Mayor,* 47 *Hun* 221. An ordinance has been

held valid which prevented cars driven in the same direction from approaching within three hundred feet of each other. *Bishop* v. *Union Railroad Co.*, 14 *R. I.* 314.

The dangers created by the use of electricity as a propulsive power of street railways, of necessity creates a new department of police regulations. The use of an agency so dangerous as electric power is a proper subject for the exercise of police control, for the purpose of obviating danger so imminent even in its most careful use. The ordinances which confer the right to construct electric railways in the public streets carefully guard the method of construction, whenever it is important for the protection of public or private interests to do so. *Kennelly* v. *Jersey City*, 28 *Vroom* 293.

Such regulations may be contained in the grant of the privilege to use the street for the purposes of an electric street railway, as conditions annexed to the grant, but their absence there does not prevent the municipality from their subsequent enactment if they be reasonable for the protection to the ordinary use to which the highway is lawfully devoted, and on the proper exercise of the general power of the state conferred upon a subordinate political body to protect the lives and property and promote the welfare of its citizens, and all other persons, natural or artificial, who have the right to claim the protection, in these respects, of the law. The maxim *"sic utere tuo ut alienum non lœdas"* is quite applicable to a street railway operated by electric power in its use of the streets of a city, and ordinances enforcing the doctrine are not only valid, but salutary as an exercise of municipal regulation.

The construction of the road and its equipment would seem, reasonably, to be a subject of municipal control when, as in this case, there is nothing in the legislative grant to construct and maintain the street railway, which forbids such control, and where, as in this case, the charter of the city confers power upon the city council, by ordinance, not only to regulate the use of the streets, but to prescribe the manner in which corporations and persons shall exercise any privileges in the use of the same, and empowers them to make and establish such

ordinances as they may deem necessary and proper for good government, for the maintenance of order and the protection of persons and property.

An ordinance requiring splices on electric lines to be insulated was declared to be a valid exercise of municipal control. *Clements* v. *Louisiana Electric Light Co.*, 44 *La. Ann.* 692 (1892). An ordinance providing guard wires in the operation of an electric street railway where several electric wires crossed each other and hung at different heights, was sustained as a reasonable exercise of the police power, under statutes conferring the right of regulation of the use of the streets. *Wisconsin Telegraph Co.* v. *Janesville Street Railway Co.*, 87 *Wis.* 72.

It must at this day be conceded that municipal authorities having the regulation of the use of streets have the power to pass all ordinances to reasonably guard and secure ordinary public safety and convenience, whether in relation to the construction of the road or its equipment. Ordinances to regulate street railways, when reasonable, are valid. *State* v. *Madison Street Railway Co.*, 72 *Wis.* 612; *State* v. *Hilbert*, *Id.* 184. What can be more reasonable and necessary for the protection of the ordinary travel and use of a street than that an electric car, capable of being driven at a high rate of speed, should have attached guards of some kind or other against accident and injury? The test is whether it is reasonably designed to guard some public or private right from threatened injury from the operation of these cars. *Tied. Pol. Pow.* 597, 599.

Upon reason and authority this ordinance is justified as an exercise of reasonable municipal or police power in behalf of the protection of the public engaged in ordinary business or travel upon the streets of the city.

The precise kind of fender is not regulated by this ordinance, but it is neither uncertain nor unreasonable because of this. The term "fender" is well defined and readily understood as a guard and protection against danger, and it is left to the prosecutor, using a reasonable discretion, and without trick or

evasion, to supply a proper and reasonable device to satisfy the plain meaning of the ordinance. The object of the ordinance can be easily effectuated, nor is there anything in the ordinance to prevent the prosecutor, from time to time, from changing a fender once adopted to one more suitable and one more effectual in subserving the purpose of the ordinance. But a *bona fide* reasonable observance of this ordinance is required by reason of its being a legal exercise of the power of municipal control, and it is not an invasion of the franchise of the prosecutor, nor an interference with the operation of its street railway or its business. It is a regulation at the same time reasonable, necessary and salutary, and entirely within the power of municipal control vested in the city council of the city, and the proceedings thereof in the adoption of this ordinance, and the ordinance also, must be affirmed, with costs.