THE STATE, THE CAPE MAY, DELAWARE BAY AND SEWELL'S POINT RAILROAD COMPANY, PROSECUTOR, v. THE CITY OF CAPE MAY ET AL.

A city having authority under its charter to regulate the use of the public streets and highways, can enact an ordinance to compel passenger cars, operated by trolley or electric power, to come to a full stop before crossing intersecting streets, and such an ordinance, if enacted in the manner prescribed by the charter of the city, is legislative in its character, and will not be set aside as unreasonable in its purpose or effect.

---

On *certiorari.*

Argued at November Term, 1896, before Justices GARRISON and LIPPINCOTT.

For the prosecutor, *Edward Ambler Armstrong.*

For the defendants, *David J. Pancoast.*

The opinion of the court was delivered by

LIPPINCOTT, J.   This writ was sued out to test the validity of an ordinance of the city of Cape May, entitled "An ordinance regulating the operation of passenger cars, operated by trolley or electric power, at streets and other crossings in the city of Cape May."

This ordinance was adopted July 9th, 1895.   It provides, in its first section, as follows: " Be it ordained and enacted by the inhabitants of the city of Cape May in city council assembled, and it is hereby enacted by the authority of the same, That all passenger cars operated by trolley or electric power shall come to a full stop at each and every street before crossing the same, and also at each and every opening for foot passengers through the boardwalk on Beach avenue, opposite to any street running down to Beach avenue, before passing the same ; also before crossing the beach walk and beach drive at any place."   The second section provides a penalty for violations of the ordinance, and the third section ordains that it shall take effect immediately.

The charter of the city of Cape May authorizes the city council to pass ordinances to regulate the streets of the city, and to provide for the manner in which corporations and persons shall exercise any privilege granted to them in the use of the same; to prevent immoderate driving or riding in the streets, and to regulate the running of locomotive engines and railroad cars therein, and also such ordinances as they may deem necessary and proper for the good government, order and the protection of property and persons.   *Pamph. L.* 1875, *p.* 206, §§ 19, 20.

The council of the city of Cape May has heretofore, by ordinance, granted this company the use of the streets for its electric cars (*Cape May, &c., Railway Co., pros.,* v. *Cape May,* 29 *Vroom* 565), and it was, at the time of the adoption of the ordinance under review, in full operation as an electric street railway.

It is conceded that the crossings upon which this ordinance is intended to have effect are the crossings of public streets

and public places devoted to all the uses of public travel in the city.

An examination of the return to the writ clearly reveals that the ordinance was passed by the city council according to the manner and procedure prescribed by the provisions of the city charter, and while there are several reasons directed against the validity of the ordinance on this ground they merit no consideration.

The other reasons for reversal are that the ordinance is not legislative in its character, and passed without notice to the prosecutor, and that it is not within the powers delegated to the city council, and also is unreasonable.

It will be noticed that the city council is clothed with power to regulate the streets by ordinance, and also to provide by ordinance the manner in which corporations or persons shall exercise any privilege granted them in the use of the same; to prevent immoderate driving or riding therein; to regulate the running of locomotives and railroad cars therein, and by ordinance, so far as may be necessary, provide for the good government, order and the protection of property and persons. *Pamph. L.* 1875, *p.* 206, §§ 19, 20.

The power, therefore, is undoubted to make reasonable regulations to reasonably control the operation of electric street railway cars within the city in many respects. *Trenton Horse Railroad Co.* v. *Trenton,* 24 *Vroom* 132. The power to reasonably regulate the operation of these street railways is implied from the authority conferred upon the city council by the city charter.

The franchise or privilege is granted by the municipality, and a reasonable regulation of the enjoyment of the franchise is not a denial of the right, for corporations which are to be regarded as inhabitants of a city are subject to its ordinances to the same extent as natural persons. The power is a police power and one which is constantly exercised in prescribing regulations for the good of the community, and such regulations can be enacted by the legislative body of the municipality without notice to the parties who may claim to be

interested, provided the regulations are made according to, and in the manner prescribed by, the charter of such municipality. The exercise of this power is legislative in its character. *Trenton Horse Railroad Co.* v. *Trenton, supra; Traction Company* v. *Elizabeth,* 29 *Vroom* 619; *Frankford and Philadelphia Passenger Railway Co.* v. *Philadelphia,* 58 *Pa. St.* 119; *North Hudson Railway Co.* v. *Hoboken,* 12 *Vroom* 71; *Booth St. Ry. L.,* § 222.

Ordinances passed by virtue of an implied power conferred upon municipal corporations must be reasonably consonant with the general powers and purposes of the corporation, and not inconsistent with the laws or policy of the state. 1 *Dill. Mun. Corp. (4th ed.),* § 319. There is much discretion left to the municipal corporation ·in the exercise of their general and implied powers, and the exercise of this authority will not be judicially interfered with unless its exercise has been manifestly unreasonable and oppressive, and is an invasion of private rights. No private right is invaded by the ordinance in question, and the presumption is in favor of its validity. The unreasonableness of the ordinance is not apparent on its face, and the burden of proof is on the prosecutor to show wherein it is arbitrary, unjust or oppressive. *Booth St. Ry. L.,* § 224, and cases cited in notes.

Regulations may be made requiring street railway cars to stop at designated places, in order to accommodate passengers and prevent unnecessary obstructions to public travel, as well as to avoid danger of accidents to others in the ordinary use of the streets and other public places. *North Birmingham Street Railway Co.* v. *Calderwood,* 89 *Ala.* 247. Street railways are a great public convenience and they are to be properly protected in the exercise of their franchise, but they are not entitled to a monopoly of the street, nor even to the exclusive use of that part covered by their tracks. They must exercise their rights in harmony with the rights of the traveling public.

The ordinance in question is presumed ·to be a valid ordinance. It does not appear on its face to be unreasonable

or oppressive under the circumstances of the case. Neither does it otherwise appear in purpose or effect to be unreasonable. Electric street railway cars can be propelled at a very rapid rate of speed along the streets and over the crossings and intersections thereof, and other public places, with great danger to those using such crossings. In view of these dangers incident to the operation of this class of street railways, it is incumbent upon the companies owning and operating them to exercise a degree of care and caution to avoid accidents commensurate with the risks involved. This degree of care is a reasonable one in view of the probabilities of danger, and the exercise of this care for the protection of the general traveling public can be enforced by ordinance. A regulation that the cars shall stop at every street before crossing, is a reasonable one, which does not interfere with the franchise of the prosecutor, and would appear to be necessary to protect the public from the dangers incident to the crossing.

The proceedings of the city council and the ordinance must be affirmed, with costs.