THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, PROSECUTOR, v. THE CITY OF ELIZABETH ET AL.

Submitted June 8, 1903—Decided February 23, 1904.

1. A municipal ordinance, passed July 2d, 1903, imposed certain restrictions, under penalty, upon every steam railroad company that "failed to comply with or observe the provisions of" a certain act of the legislature, approved April 14th, 1864. The act thus referred to at no time prescribed any duties to be performed by any steam railway company. *Held*, that the ordinance was void for uncertainty.

2. The power to compel steam railway companies to bring their trains to a stop before crossing a street on which a street railway is operated, has not been conferred by the legislature upon municipalities by any general law, and is not granted to the city of Elizabeth by its charter power "to regulate the speed and running of locomotive engines and railroad cars through said city."

3. A municipal ordinance requiring that the signal to be given to an approaching locomotive engine or train that a street crossing is free from danger must be given by a member of the crew operating such approaching locomotive engine or train, is unreasonable.

4. Where the right of a prosecutor to litigate the validity of an ordinance brought up by his writ is not raised by any motion touching the improvidence of the allowance of such writ or its vacation or the dismissal of the writ itself, the standing of the prosecutor will be assumed on final hearing, unless his lack of legal interest in the controversy affirmatively appears.

5. In the present case the prosecutor's lack of legal interest in the controversy is not affirmatively shown·by the mere fact that the return brings up an ordinance instead of a conviction under it.

On *certiorari.*

Before Justices GARRISON and GARRETSON.

For the prosecutor, *George Holmes.*

For the defendants, *C. Addison Swift.*

The opinion of the court was delivered by

GARRISON, J. Section 1 of the ordinance brought up by this writ is void for uncertainty. It is directed against steam railway companies that have failed to comply with or observe the provisions of the act of April 14th, 1864. That statute, however, prescribed no duty to be performed by any steam railway company and contained no provision of any sort which they were commanded to observe; on the contrary, its sole object and effect was to grant to steam railway companies, having certain peculiarities of construction and operation, immunity from municipal regulations. There can therefore be no steam railway companies that have failed to comply with or observe the provisions of that act. Municipal corporations alone could have done so. It may be surmised that the purpose of the ordinance was to affect all steam railway companies not constructed or operated in the manner described, but not required by the act of 1864; but the meaning of a penal ordinance should arise by construction, and not from conjecture. If it was the purpose of the draftsman of this ordinance to make use of the descriptive language employed in the act of 1864, he should have referred to it in terms that required, or at least admitted, of such a construction. Inasmuch, therefore, as no railway is required by the act of 1864 to comply with or observe any of its provisions,

no railway can lawfully be exposed to the penalty imposed by this section of the ordinance.

Furthermore, neither the power to compel a railway company to stop running its trains nor the authority to give, by ordinance, a paramount right at street crossings to surface railways has been granted by the legislature to the city of Elizabeth, both of which powers are implied in this section of the ordinance. The charter right "to regulate the speed and running of locomotive engines and railroad cars through said city" no more gives to the city of Elizabeth the right to compel trains to stop than the similar language in the charter of the city of Bridgeton gave to that municipality the power to compel the erection of gates. *West Jersey and Seashore Railroad Co.* v. *Bridgeton,* 35 *Vroom* 189.

The case of *Cape May Railroad Co.* v. *Cape May,* 30 *Vroom* 404, relied upon by the defendants, rests upon an entirely different foundation, namely, the right of a municipality under its charter power to regulate streets, to provide that a vehicle using such streets shall come to a stop at each crossing.

Section 2 of the ordinance is also void, for the reasons given above, and further because of its unreasonableness. Its provision that the signal that shall avoid its penalty must be given to the approaching locomotive engine or train by "a member of the crew operating such approaching locomotive engine or train" is wholly unreasonable. No reason can be suggested why such signal would not be equally efficacious if given by a gateman or other employe of the railroad company who is not engaged in the operation of such approaching locomotive engine or train. It is impossible to escape the conviction that an added and totally unnecessary element of danger, both to train hands and to train passengers, is unreasonably introduced by this section of the ordinance.

The standing of the prosecutor to litigate the validity of this ordinance, although argued on behalf of the defendants, has not been raised by any motion looking either to the improvidence of the allowance of the writ or its vacation, or to

the dismissal of the writ itself. The prosecutor therefore "has not expressly or impliedly been required to maintain the *status* that, under our practice, is accorded upon final hearing by the allowance of the writ of *certiorari." Avon* v. *Neptune City,* 28 *Vroom* 701; *West Jersey Traction Co.* v. *Camden,* 29 *Id.* 362.

The mere fact that the return brings up an ordinance instead of a conviction under it, which is the point made by the defendants, does not affirmatively establish the prosecutor's lack of legal interest in the controversy so as to lead to the dismissal of its writ. The cases cited by the defendants, namely, *Pennsylvania Railroad Co.* v. *Jersey City,* 18 *Vroom* 286; *Gaslight Co.* v. *Rahway,* 29 *Id.* 510, and *Hamblet* v. *Asbury Park,* 32 *Id.* 502, were, each of them, cases in which a conviction of the defendant under the ordinance was necessary to establish the obnoxious application of the ordinance to the prosecutor or of some of its provisions to a state of facts in which he was specially interested. This is pointed out by the opinion delivered in each of these cases as the basis for the decision rendered, viz., that a conviction was necessary to the establishment of the standing of a prosecutor to attack *in toto* an ordinance, general in its terms, that might be adjudged reasonable as applied to one state of facts and unreasonable when applied to circumstances of a different character. *Nicoulin* v. *Lowery,* 20 *Id.* 391.

In *Hamblet* v. *Asbury Park, supra,* the only one of these cases that has been carried to the Court of Errors, the prosecutor was a citizen of the State of New York, as to whom it was contended, under the doctrine of *Robbins* v. *Shelby County,* 120 *U. S.* 489, the license fee established by the ordinance could not lawfully be imposed. In the opinion delivered by this court it was said, respecting the ordinance, "whether such a construction will be put upon it by the municipality can be known only by the institution of proceedings against the prosecutor; whether a like construction will be placed on it by the judicial tribunal in which the action is heard can be known only by a conviction and judgment

for the penalty prescribed by the ordinance. Such a conviction alone can furnish evidence that the ordinance affects the prosecutor and thus present in concrete form and as to the particular vocation the issue now sought to be raised as a moot question involving the fate of the entire taxing scheme. The remedy by *certiorari* to annul this ordinance is not open to the prosecutor in advance of any action taken against him under its provisions." The judgment entered was unanimously affirmed by the Court of Errors and Appeals on November 21st, 1898, for the reasons given in the opinion cited, thereby authoritatively settling for this court that where a conviction under an ordinance is essential to the establishment of the prosecutor's legal interest to controvert the validity of such ordinance he cannot himself inaugurate such controversy by a *certiorari* of the ordinance itself. That opinion, however, and the reasoning upon which it is founded, give no support to the proposition that where an ordinance is claimed to be inherently invalid as applied to any state of facts, a prosecutor who is unquestionably affected by the ordinance, if valid, may not himself inaugurate the proceedings for testing its validity. In such case a conviction would add nothing to the establishment of the prosecutor's legal interest in such controversy, while the indeterminate menace of such penal law must seriously affect the value of his property and compel him either to conform indefinitely to an illicit interference with his business or to pile up penalties to a ruinous extent while awaiting an adventitious opportunity to test its validity. Every reason upon which the case last cited was affirmed is absent from such hypothetical case and from the case actually before us, and where none of the reasons for a rule exists it is reasonable to assume that the rule does not exist.

Obviously, it is not within the province of this opinion to decide in what cases a *certiorari* will lie. It is, however, necessary to the disposal of the case before us to determine the narrower question whether the mere fact that the return brings up an ordinance, instead of a conviction under it,

establishes affirmatively that the prosecutor is without standing to prosecute his writ, and upon this point our decision is that it does not.

The ordinance of July 2d, 1903, is set aside, with costs.