HIRAM E. BUDD AND ISAAC W. BUDD, PLAINTIFFS IN
    ERROR, v. CAMDEN HORSE RAILROAD COMPANY AND
    THE CAMDEN AND SUBURBAN RAILWAY COMPANY,
    DEFENDANTS IN ERROR.

Argued March 10, 1904—Decided November 14, 1904.

A double-track street railway was constructed in the northerly half
    of a road thirty-three feet in width, pursuant to a city ordinance;
    the poles carrying electric wires were close to the outer line of
    the street on which the plaintiffs' land abutted, and the ties
    extended to within two or three feet of that line; no sidewalk
    had been built. _Held_, that the construction of the railway did
    not constitute an additional servitude, and that the abutting
    owners—owners of the soil of the highway—could not maintain
    ejectment against the railway company.

On error to the Supreme Court. This case was tried at
the Camden Circuit before Justice Garrison and a jury, and a
verdict directed for the defendants below.

For the plaintiffs in error, _Francis D. Weaver_ and _John
W. Wescott._

For the defendants in error, _E. A. Armstrong._

The opinion of the court was delivered by

SWAYZE, J. This is an action of ejectment to recover pos-
session of land sixteen and one-half feet in width and fourteen
hundred and twenty-seven feet in length, bounded by the
centre and northerly lines of Ferry road in the city of
Camden. Upon this land and within the bounds of the
highway the defendants have constructed a double-track street
railway, and have located poles carrying wires through which
electric power is transmitted. The fee is in the plaintiffs,
subject to the easement for a street. The tracks and poles
are located in pursuance of, and in conformity with, a city
ordinance and are entirely within the highway. No sidewalk
has been constructed at this point. The plaintiffs' substantial

complaint is that the ties and poles are so close to the northerly line of the street, called the building line, that they will interfere with the erection of buildings, make it impossible to have steps in front, or to maintain a sidewalk, and compel gates and doors to be so constructed as to swing inward; that the construction of the tracks in so narrow a space makes common travel dangerous, and will compel occupants of houses, if any are hereafter erected, to exercise extraordinary caution in getting in and out of their homes. In view of these facts the plaintiffs urged at the trial that the defendants' tracks amounted to an additional servitude not within the recognized public easement. The trial judge held adversely to this view and directed a verdict for the defendants.

Although ejectment may be maintained by the owner of the soil in a public highway against one who attempts to appropriate it to a purpose not within the limits of the public easement, it is now settled that the action cannot be maintained against a public corporation occupying the street within the limits of the public right; nor against the agencies through which the public corporation exercises its rights. *French* v. *Robb,* 38 *Vroom* 260, 263. It is also settled that the substitution of electric motors with the trolley system, including poles set within the curb line, for horses on street railroads does not, *per se,* create an additional easement. *Roebling* v. *Trenton Passenger Railway Co.,* 29 *Id.* 666, 673; *Montclair Military Academy* v. *North Jersey Street Railway,* 41 *Id.* 229.

The opinion in the Roebling case contained an intimation that it must not be construed so as to allow the railway company to place the track so near the curb line as to interfere unreasonably with the owner's access to his property, or with the enjoyment of the privileges which owners of abutting lands are entitled to enjoy in a public highway in front of their premises. The question now presented is whether the defendants' tracks are so constructed and their poles so located as to interfere unreasonably with the owner's access to his property.

The construction of the tracks does not seem to prevent access to the land in its present condition or for any purpose for which land without buildings may be used. It is true that the legitimate use of the street for access to the land may cause great inconvenience to the defendants in the operation of their road by interrupting the passage of cars, but as was said in *Kennelly* v. *Jersey City,* 28 *Vroom* 293, 295, "the private right will not on that account be diminished; the public using the tracks must put up with the interruption."

The location of the poles and the ties at or near the northerly limit of the street may, indeed, prevent the future construction of a sidewalk of the width ordinarily required by the ordinances of Camden; but this is a matter of purely municipal regulation, and the ordinance of 1886, even if otherwise applicable to the present case, cannot be applicable if the later ordinance of 1896 has made the building of such a sidewalk impossible. The ordinance of 1886 seems, however, to be applicable only to streets thirty feet in width in the city of Camden, and in the present case the centre line of Ferry road is the boundary line of the city, so that only the northerly sixteen and one-half feet is within the city limits. That the ordinance was intended to apply only to streets wholly within the city is indicated by the fact that it undertakes to provide for sidewalks on each side of the street and makes no provision for sidewalks on one side only. We cannot agree with the plaintiffs' contention that the ordinance of 1886 gave them a vested right to have a sidewalk seven and a half feet wide.

The danger arising from the operation of cars by electricity in the street is, like the injury by vibration in the Roebling case, one of those injurious consequences which result from the legitimate and proper use to which public thoroughfares are devoted. It is not unlike the danger arising from increased traffic in the streets by an increasing population.

It is contended by the plaintiffs that they suffer a special injury, because, if fences are built, the gates must swing inward and not outward; if houses are built, the doors must

swing inward, and no steps can be placed within the lines of the street. No doubt, it is a common practice to build gates and, perhaps, doors so as to swing outward, and to build stoops within the street line; but there can be no right in the abutting owner to interfere even to this extent with the public easement in the street if the municipal authorities choose to adopt regulations which expressly or by necessary implication prevent such an interference. The public right to use the street and to have it unobstructed is superior to the landowner's right to obstruct it even by swinging gates and doors and stoops. Such obstructions are peculiar privileges, usually afforded to the owner of the land in the use of the adjacent sidewalk (*Weller* v. *McCormick,* 18 *Vroom* 397, 400), but are not his as matter of legal right. The public right is paramount. *S. C.,* 23 *Id.* 470, 472. It is not necessary in the present case to decide what the abutting owner's rights would be if there was an existing sidewalk. In that respect the case is like *West Jersey Railroad Co.* v. *Camden, Gloucester and Woodbury Railway Co.,* 7 *Dick. Ch. Rep.* 31.

Upon the whole case we fail to find such unreasonable user of the highway as would amount to an additional servitude.

The judgment must therefore be affirmed.

*For affirmance*—THE CHANCELLOR, DIXON, FORT, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 9.

*For reversal*—None.