THE CITY OF CAMDEN v. THE PUBLIC SERVICE RAILWAY COMPANY, PROSECUTOR.

THE CITY OF CAMDEN v. SAMUEL W. BARRETT, PROSE-CUTOR.

Argued November 9, 1911—Decided March 14, 1912.

1. The ordinance by virtue of which the Public Service Railway Company has the right to operate its street railway in certain streets of the city of Camden contains a provision that "all cars shall stop at street crossings clear of said crossings on signal to let off and take on passengers." · The city charter of Camden authorizes the city council to pass ordinances to regulate the streets of the city, and to prescribe the manner in which corporations or persons shall exercise any privilege granted to them in the use of any street. *Held,* that city council had power to enact an ordinance compelling the railway company to stop each railway car operated by it on the near side of each and every street crossing, as such car approaches such crossing, to take on or let off passengers.

2. Evidence given by witnesses that, acting under orders from the police department of the city of Camden, they waited for a street railway passenger car on the near side of a street crossing, and that they desired to board the car as passengers, and that the motorman refused to stop on signal, taken in connection with the admission of the counsel for the defendant at the trial that the cars were in fact operated without stopping at the crossing in question, justified a finding of a violation of an ordinance providing that such cars shall be stopped on the near side of such street crossings, as such cars approach such crossings, to take on or let off passengers.

3. The ordinance by virtue of which the Public Service Railway Company has the right to operate its street railway in certain streets in the city of Camden, contains a provision that "all cars shall stop at street crossings clear of said crossings on signal to let off and take on passengers." ·A later ordinance, which was within the charter powers of the city, provided that it should be the duty of all corporations operating under ordinance a street railroad in the streets, to stop each railway car, so operated, on the near side of each and every street crossing, to take on and let off passengers. *Held,* that the latter ordinance applies to the operation within the city limits of so called "special" cars intended for the accommodation of the general public, and operated from the "ferry" in Camden to Moorestown and return.

4. Where an ordinance of a city declares that any corporation or officer, agent, servant or employe of any corporation operating a street railroad in the city, who shall refuse to stop any railway car, so operated in the city streets, at the near side of any street crossing, on approaching the same, for the purpose of taking on or letting off passengers, shall upon conviction be liable to a fine, a conviction of a motorman was justified by evidence that he was in the employ of the company that was operating under ordinance a street railway car in the city streets, and as such motorman, while driving such car, refused to stop at a street crossing to take on passengers as required by the ordinance.

On *certiorari.*

Before Justices TRENCHARD and KALISCH.

For the prosecutor, *Edward Ambler Armstrong.*

For the defendant, *Edwin G. C. Bleakly.*

The opinion of the court was delivered by

TRENCHARD, J. These two cases have been argued together. The writs bring up for review two convictions before the recorder of the city of Camden of the violations of an ordinance of that city, passed May 26th, 1910, which provides as follows:

"Section 1. It shall be the duty of all corporations or persons now or hereafter operating a street railroad or railroads under an ordinance or ordinances of said city in, along or over any or all of the streets or highways of the city of Camden, to stop each railway car so operated on the near side of each and every street crossing, as such car approaches such crossing, to take on or let off passengers.

"Section 2. That any corporation or officer, agent, servant or employe of any corporation or of any other person so operating any such railroad or railroads in said city, who shall neglect or refuse to stop any railway car so operated in, along or over any of the streets of the city of Camden at the near side of any street crossing or crossings, upon approaching the same, for the purpose of taking on or letting off a passenger or passengers, shall, upon conviction of such offence before the

recorder of the city of Camden, be liable to a fine of ten dollars and the costs of prosecution for each offence."

The recorder imposed a fine in each case, one against the Public Service Railway Company, and the other against a motorman in the employ of that company, Samuel W. Barrett, who are the prosecutors.

The reasons urged why the convictions should be set aside will be considered in the order argued.

*First.* The contention that the city had no power to pass the ordinance alleged to have been violated, is without merit.

The ordinance of the city of Camden, passed July 26th, 1894, by virtue of which the railway company has the right to operate its street railway in the city streets contains a provision that "all cars shall stop at street crossings clear of said crossings on signal to let off and take on passengers."

The charter of the city of Camden authorizes the city council to pass ordinances to regulate the streets of the city and to prescribe the manner in which corporations or persons shall exercise any privilege granted to them in the use of any street. *Pamph. L.* 1871, *p.* 210, § 30, subsection 7.

The city, having such authority under its charter, had the power to enact the ordinance in question to compel the street railroad company to stop each railway car, operated by it in the city streets, on the near side of each and every street crossing, as such car approaches such crossing, to take on or let off passengers. *Cape May Railroad Co.* v. *Cape May,* 30 *Vroom* 404. In that case it was held by this court that a similar ordinance, enacted pursuant to similar charter powers, was not unreasonable in its purpose or effect. Therein, in the course of the opinion, Mr. Justice Lippincott said: "Regulations may be made requiring street railway cars to stop at designated places, *in order to accommodate passengers* and prevent unnecessary obstruction to public travel, *as well as to avoid danger of accident to others* in the ordinary use of the streets and other public places. Street railways are a great public convenience, and they are to be properly protected in the exercise of their franchise, but they are not entitled to a monopoly of the street, nor even to the exclusive use of that

part covered by their tracks. They must exercise their rights in harmony with the rights of the traveling public."

*Secondly.* The contention that the persons who signaled the car to stop were not *bona fide* passengers, and, hence, that the convictions were not justified, we deem to be not well founded.

The evidence shows that these persons were acting under orders from the police department; that they waited for the cars on the near side of the street crossing, and desired to board them as passengers, and that the motorman refused to stop on signal. This evidence, taken in connection with the admission of the counsel for the defendants at the trial that the cars were in fact operated without stopping at the crossing in question, clearly justified the finding that the ordinance in question was violated.

*Thirdly.* Nor is there any merit in the contention that the cars in question were engaged in a special service, and hence could not lawfully be required to stop at street crossings within the city.

The testimony shows that, although the cars in question were called "special" cars and were operated from the "ferry" in Camden to Moorestown and return, yet they were intended for the accommodation of the general public. Since the traveling public was entitled to avail itself of these cars, they are subject to reasonable regulations as to the manner of operation. As we had occasion to point out in Camden *v.* Public Service Railway Co. (decided at this present term), if, in operating these cars the company may disregard the rights of the public traveling in Camden, there would seem to be no limit to the extent to which the traveling public of the city of Camden may be deprived of like rights, although the company was given and accepted a franchise to operate within the city upon the express condition that it stop all cars at street crossings clear of the crossing on signal to let off and take on passengers.

*Fourthly.* The prosecutor Barrett alleges as an additional reason for reversal that he "was not engaged in operating the cars in question, and was not a person embraced by or covered under the provisions of said ordinance "

But there is no foundation in fact nor in law for such objection.

Section 2 of the ordinance provides that any corporation or officer, agent, servant or employe of any corporation operating under ordinance a street railroad in the city streets, who shall neglect or refuse to stop any railway car, as required by section 1 of the ordinance, shall, upon conviction, be liable to a fine.

The evidence shows that Barrett was the motorman employed by the Public Service Railway Company, on the car in question, and, as such motorman, refused to stop the car at the street crossing to take on passengers as required by the ordinance.

Both convictions will be affirmed, with costs.