ORLANDO L. S. ROBERTS, complainant-respondent,

*v.*

JOHN P. TOMPKINS, defendant-appellant.

(No. 88.)

———

JOHN S. ROBERTS, complainant-respondent,

*v.*

JOHN P. TOMPKINS, defendant-appellant.

(No. 89.)

———

EMILY R. SCHOFF, complainant-respondent,

*v.*

JOHN P. TOMPKINS, defendant-appellant.

(No. 90.)

[Submitted March 19th, 1909. Decided June 14th, 1909.]

1. Defendant obtained from complainants without payment or consideration, deeds of their interests in real estate worth about $11,000 over the mortgages thereon, by leading complainants to believe that he was morally the owner under a will not published or witnessed, that their interests were of nominal value, and in one case, that the "equity was small."—*Held*, that even if there were no statement of anything false as being true, defendant knowingly took advantage of a false impression created by what he had said, and was thereby guilty of false representation for which the deeds could be set aside.

2. *Lomerson* v. *Johnston, 47 N. J. Eq. (2 Dick.) 312,* followed.

3. If a party is enforcing a legal right in a legal manner the reasons for his so doing are immaterial.

On appeal from the court of chancery.

*Messrs. Thompson & Cole,* for the appellant.

*Mr. Ulysses G. Styron,* for the respondents.

The opinion of the court was delivered by

PARKER, J.

These three suits are on the same lines as the case of *Ricketts* v. *Tompkins, 73 N. J. Eq. (3 Buch.) 552.* The bills were filed to set aside as obtained by fraud of defendant, deeds made to him by various parties claiming by descent undivided interests in real estate at Atlantic City, the title to which, subject to two mortgages aggregating $2,500, stood at the time of her death in one Annie N. Roberts. She died unmarried and intestate, leaving as her heirs-at-law three surviving sisters, of whom one afterwards died unmarried and intestate and another is the mother of the defendant; and also a number of nephews and nieces, including the complainant in *Ricketts* v. *Tompkins, supra,* and the three complainants in the cases at bar.

As will appear by the reported opinion in the *Ricketts Case,* Miss Annie Roberts left a penciled writing purporting to be a testamentary disposition of her property, giving it all to the defendant. This paper was signed but not witnessed or published, and was therefore worthless as a will. Annie N. Roberts died on January 3d, 1896. On the 16th Caroline Roberts, one of the surviving sisters, quitclaimed all her interest in the property to Mrs. Tompkins, defendant's mother; and by deed dated January 27th, 1896, acknowledged on the 29th, the latter made her deed purporting to convey the whole premises to the defendant.

It would appear that defendant believed himself to have taken

by this deed a complete title, on the theory that the nephews and nieces did not inherit any interest therein, for he occupied it for about ten years and in March, 1906, apparently in entire good faith, he contracted to convey a clear title for $13,500. The purchaser applied to a title company for a guarantee of title, and being advised in due course of the outstanding interests, notified defendant, who then consulted his own counsel and was advised that he owned only two-fifths undivided interest in the property, and that a complete title could be acquired only by deeds from the other heirs or by obtaining control of the outstanding mortgages and foreclosing them. He seems to have taken both courses. The mortgages were assigned to one Faunce and promptly foreclosed by him as trustee for defendant. The bill to foreclose was filed on June 11th, 1906, and the sheriff's sale took place on October 27th of the same year. To this foreclosure the three complainants-respondents were not made parties, because before the bill was filed the defendant had visited them all and obtained the deeds which they respectively seek to set aside as procured by fraud and misrepresentation of the facts.

No consideration whatever was paid to any of the complainants, nor was any one of them under obligations to the defendant. The value of the property is sufficiently indicated by the price named in the agreement, $13,500, deducting from which the mortgage encumbrance leaves an equity of about $11,000. The share of Orlando L. S. Roberts in this equity was one undivided fifteenth, and of John S. Roberts and Mrs. Schoff each one-twentieth. It is therefore apparent that each one parted with a valuable interest for nothing. Each complainant swore positively that he (or she) was not aware at the time of signing the deed that he (or she) had any interest in the property, that represented definite value. Without quoting the testimony, or going into particular detail, the representations made by defendant were such as to lead the complainants to believe defendant to be the rightful owner of the whole, that their signatures were a matter of form to enable him to get over some technical objection of counsel advising the purchaser, and that by signing they parted with nothing of material value. As Orlando Roberts

put it, he inferred that the interest was so small that it was not worth while making an enemy of Tompkins by refusing his signature. Inasmuch as Orlando was a pensioner at a sailors' home, to whom such a sum as $500 was a matter of great moment, it is readily inferable that he would not have signed if matters had been correctly represented to him.

To Mrs. Schoff and John S. Roberts the defendant made further representations about the testamentary paper, which he called a will, and said it was unavailable because of a "technicality," meaning, but not stating, that it was not published nor witnessed. He had the "will" in his pocket, but did not show it to any of the parties. In this aspect the case somewhat resembles *Broderick* v. *Broderick, 1 P. Wms. 239.*

To John S. Roberts he also spoke of the equity being small. If he said nothing about a "will" to Orlando, he substituted the inducement that all the other heirs had signed away their interests, as indeed they had, but certainly so far as John S. Roberts and Mrs. Schoff were concerned, and also Helen R. Ricketts, under the influence of these very representations from Tompkins.

It is urged for the appellant that no statement made by him was materially false, and that the complainants are driven to charges of *suppressio veri* which are not contained in their bills. We do not agree with this view, but if it were true that no absolutely false statement was made, the case would still fall within the rule in *Lomerson* v. *Johnston, 47 N. J. Eq. (2 Dick.) 312,* where it was said: "In order to establish a case of false representation it is not necessary that something which is false should have been stated as if it were true. If the presentation of that which is true creates an impression which is false, it is, as to him who, seeing the impression, seeks to profit by it, a case of false representation." See also *20 Cyc. 23, 24.* There can be no doubt that the several complainants derived a false impression of their rights from what defendant told them; and that he intended that they should, or at least saw that false impression and undertook to profit by it.

Two minor points are made. Defendant produces an agreement of sale of this property between a former owner and de-

fendant's mother, Hannah Tompkins, and asserts that the original conveyance to Annie N. Roberts was in execution of that agreement; that the purchase-money was supplied by Hannah Tompkins, who was therefore equitable owner by virtue of a resulting trust, and claims that because of these circumstances his representation that he was morally the owner of the property was justified. This claim was not opened to the court until the day of final hearing, at which time the court and counsel came to an understanding that it was properly the subject of a cross-bill. Some evidence was taken to show that Annie N. Roberts had no means and was dependent for her support on defendant and his mother; and the old agreement was introduced in evidence. The court allowed defendant twenty days to file a cross-bill, but none was filed. Hence the direct attack on complainants' title may be considered as abandoned and it is a legitimate inference that defendant does not seriously rely on this feature of his defence. In any event complainants had a legal title and presumptively the equitable interest was joined thereto; and it cannot be said that a claim of this kind justified defendant in telling them that their interest was in effect nominal.

Criticism is also made of the conduct of complainants' solicitor in stirring up the litigation by alleged misrepresentation of some testimony given by defendant to the effect that Annie N. Roberts left no will and that thereby complainants became unfairly prejudiced against defendant. Without passing on the merits of this issue, it is sufficient to say that as complainants had an equitable right which they have enforced in a manner authorized by law, their motives and the underlying causes for their action are quite immaterial. *Davis* v. *Flagg, 35 N. J. Eq. (8 Stew.) 491.*

The decrees appealed from will be affirmed, with costs.

No. 88—

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON—15.

*For reversal*—None.

No. 89—

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON—15.

*For reversal*—None.

No. 90—

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON—15.

*For reversal*—None.