CITY OF CAMDEN, DEFENDANT IN ERROR, v. PUBLIC SERVICE RAILWAY COMPANY, PLAINTIFF IN ERROR.

Submitted December 9, 1912—Decided March 3, 1913.

1. Under the power given by the charter of Camden to the city council to regulate the streets and prescribe the manner in which corporations shall exercise any privilege granted to them in the use of any street, an ordinance may be passed requiring street cars running from Merchantville and Moorestown through Camden to the Philadelphia ferry to stop for passengers at the intersection of all cross streets. Such an ordinance is an exercise of the police power.

2. In a prosecution for violation of an ordinance requiring street cars to stop for passengers at the intersection of all cross streets, it is no defence that the person signaling the car to stop was a policeman acting as a detective for the purpose of securing evidence of a violation of the ordinance without any *bona fide* desire to become a passenger.

3. Where a public official is acting for a public purpose in pursuance of his official duty, his motive is of no importance when his evidence is offered to sustain a prosecution.

On error to the Supreme Court, whose opinion is reported in 53 *Vroom* 242.

For the defendant in error, *Edwin G. C. Bleakly.*

For the plaintiff in error, *Frank Bergen* and *Edward Ambler Armstrong.*

The opinion of the court was delivered by

SWAYZE, J. The railway company was required by the ordinance of 1910 to stop its cars in the city of Camden on

the near side of every street crossing to take on or let off passengers. The power of the city to pass this ordinance is derived from the charter which authorizes the city council to pass ordinances to regulate the streets of the city and to prescribe the manner in which corporations shall exercise any privilege granted to them in the use of any street. It is not questioned that the charter authorizes the council to pass ordinances on this subject intended to secure the safety of the public. It follows that if necessary for that purpose, cars may be required to stop at the intersection of every street. The argument is that the present ordinance is unreasonable because unnecessary, if meant to secure the public safety, and that in fact it is not meant for that purpose, but is intended to secure the mere convenience of passengers and intending passengers. It is not denied that the council has power to prescribe the points at which street cars shall stop. In view of the character of street cars as public conveyances, and the special privileges accorded them in order that they may subserve the convenience of the public, they obviously stand on a different footing from the ordinary private vehicle, and are subject to public regulation as to the points at which they shall be required to stop. The common custom of frequent stops, and at street corners, is enough to demonstrate that the requirement is not in itself unreasonable. If there were doubt on this point, it would be removed by the contract made by the railway company in accepting the ordinance of 1894, which required that all cars should stop at street crossings clear of said crossings on signal to let off and take on passengers. This contract of itself requires all cars to stop. The ordinance of 1910 adds only the requirement that the stop shall be on the near side and the sanction of a penalty in case the ordinance is violated. The regulation as to the side at which the car shall stop is obviously a matter for the city council; the burden imposed on the company is apparently the same whether the car is required to stop on the near or the far side. Such an ordinance was sustained by the Supreme Court. *Cape May Railroad Co.* v. *Cape May,* 30 *Vroom* 404. The penalty prescribed by the ordinance of 1910 cannot,

however, be justified by the contract of 1894. If valid, it must be because the later ordinance is a valid exercise of the police power, and while this is conceded when the regulation is to secure the public safety, it is urged that the requirement that through cars from Moorestown and Merchantville stop at every street corner in Camden for passengers is obviously not for the public safety but merely for the convenience of passengers. The term "police power" is not altogether a satisfactory one. It connotes, perhaps, more than the word "police" in its ordinary use, and embraces certain powers reserved to be exercised by the public authorities for the public benefit. The right to regulate the stopping of railroad trains is within this reserved power. *Gladson* v. *Minnesota,* 166 *U. S.* 427. Even where the train is engaged in interstate commerce. *Lake Shore and Michigan Southern Railway* v. *Ohio,* 173 *Id.* 285. We see no reason for doubting that an ordinance of a city, acting under power given by its charter, that requires street cars to stop at the intersection of all cross streets, is an exercise of the police power.

The question remains whether it was a reasonable exercise of this power to require through cars running to the Philadelphia ferry from Merchantville and Moorestown, for the especial accommodation of citizens of those towns, to stop in Camden. It is urged that there is nothing to show that the railway company did not run cars enough, aside from the through cars, to accommodate the local traffic within the limits of Camden. This, however, is not the precise question to be determined. Passengers from Merchantville or Moorestown might wish to alight at points in Camden long before the car reached its terminus at the ferry; and passengers from Camden to Merchantville or Moorestown might wish to board the car at points in the city without going to the ferry or the other points within the city at which the through cars stop. We know no reason why the city council might not regulate the stops of street cars with a regard to the interest and need of such passengers. Indeed, in view of the fact that one of the peculiar characteristics of street railroads is frequent stops for the reception and discharge of passengers along its route,

usually at every street corner (36 *Cyc.* 1345, 1347), in return for which service they are allowed special privileges in the public highways, it may be doubted whether in the absence of legislation conferring the authority a street railroad is entitled to these privileges for cars that do not purport to serve the municipality whose highways they use. This question was not argued and we need not express an opinion thereon. We need now go no further than to hold that the street railway in return for its privileges in the highways of Camden may properly be required to stop all cars, whether local or through cars, at the usual stopping places within the city limits.

A question remains whether the present case shows a violation of the ordinance. The refusal to stop the car was upon the signal of a policeman acting as a detective for the purpose of securing evidence of a violation of the ordinance, and it is urged he had no *bona fide* desire to become a passenger. We think this is not important. He was not merely an informer seeking to make a case in order that he might obtain or share the penalty, but a public official acting for a public purpose in pursuance of his official duty. Under such circumstances, his motive is of no more importance than the motive of one pursuing his legal right in a court of justice. We have said that the legal pursuit of one's right, no matter what may be the motive, is neither illegal or inequitable. *Davis* v. *Flagg*, 8 *Stew. Eq.* 491, 494; *Roberts* v. *Tompkins*, 5 *Buch.* 576; *Crocheron* v. *Savage, Id.* 589. The case of *Bull* v. *New York City Railway Co.*, 192 *N. Y.* 361, differed from the present case because the penalty in that case went to the party aggrieved, and the court held that an attorney who was merely seeking to secure evidence to support penal actions by his clients was not a party aggrieved. The other cases cited are similar.

We find no error and the judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, PARKER, BERGEN, MINTURN, BOGERT, VREDENBURGH, CONGDON, TREACY, JJ. 11.

*For reversal*—None.